605 So.2d 926 (1992)
Robert Garner JETT, Appellant,
v.
STATE of Florida, Appellee.
No. 90-257.
District Court of Appeal of Florida, Fifth District.
September 25, 1992.
James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.

*927 ON MOTION FOR REHEARING EN BANC
HARRIS, Judge.
We grant the State's motion for rehearing en banc, withdraw our previous opinion, and substitute the following opinion.
Robert Garner Jett was convicted on charges of sexual battery and lewd and lascivious assault on a child. The young victims, girls who were at the time nine, seven and five years of age, were the daughters of Jett's half-sister. Jett was visiting in the home of the children and was left in charge of them when the alleged offenses were committed. Although Jett's actual relationship with the children meets the definitional requirements of "child abuse or neglect," such relationship was not alleged in the information and is not an element of the charged offenses.
Jett's only point on appeal with merit involves the court's refusal to recognize the section 415.512 waiver of privilege between the professional and the client in a case involving child abuse or neglect.
We find that the law requires this conviction be reversed because Jett was not permitted to question the psychotherapist and psychologist concerning their communications with two of the three child victims; the mother waived the privilege as to one of the girls.
Judge Griffin has discerned a legislative intent behind section 415.512 that is both reasonable and practical. Even if it was not the original intent of the legislature, we commend it for their consideration. It seems to better balance the requirement for reporting and the benefit of remedial counseling than does the present language of the statute.
To construe section 415.512 in accordance with this suggested legislative intent, however, would require us to not only interpret an unambiguous statute (section 415.512)[1] but also rewrite the reporting requirement contained in section 415.504(1):
Any person ... who knows, or has reasonable cause to suspect, that a child is an abused or neglected child shall report such knowledge or suspicion to the department.
The reporting requirement is not limited to the first person reporting. Nor does it exempt treating professionals who are brought in to counsel the perpetrator or victim after the child abuse has been reported. The person given the obligation to report may not assume that someone else has or will report; nor can such person rely on the statement by the perpetrator, the victim or parent that the matter has been reported. (It may well be that the perpetrator, victim or parent may not want the matter reported.)
It appears that the legislature contemplated multiple reports of the same abuse.
Section 415.504(4)(a) requires the establishment of a central abuse registry to receive all such reports for the purpose, among others, of monitoring and evaluating the effectiveness of the reporting requirement and to assure compliance with the requirements. It appears that the legislature, in order to assure that the abuse is reported, has determined that everyone who has knowledge of it should report it.
In Carson v. Jackson, 466 So.2d 1188 (Fla. 4th DCA 1985) the court considered in a civil context whether the privilege was waived as to a post-reporting, examining (treating) psychologist's communication with the perpetrator of child abuse. The court acknowledged that the purpose of the privilege was to encourage those needing treatment to seek it out; however, the court found the intent of the legislature was to favor discovering child abuse over the perpetrator's need for counseling and held the waiver effective. Although Carson dealt with the waiver as it applied to the perpetrator seeking treatment, we cannot read the plain language of the statute to be so patient specific. It waives the privilege both as it concerns the perpetrator and the victim.
*928 We agree with Judge Sharp's dissent that the legislature may not have intended, by enacting section 415.512, to subject the victim's statements made to mental health providers discoverable under the criminal discovery rules. Such disclosure appears counterproductive to the legislative scheme of protecting children. However the legislature determined that such children cannot be protected or rehabilitated unless the abuse is first reported. And in order to require the reporting, the reporter had to be protected. Therefore, the privilege was waived.
The waiver statute is clear:
The privileged quality of communication ... shall not apply to any situation involving known or suspected child abuse or neglect and shall not constitute grounds for failure ... to give evidence in any judicial proceeding relating to child abuse or neglect.
The legislature defined "child abuse or neglect" as it relates to this statute in section 415.503(3), Florida Statutes (1991):
"Child abuse or neglect" means harm ... to a child's physical or mental health or welfare by the acts ... of a parent, adult household member, or other persons responsible for the child's welfare, or, for the purpose of reporting requirements, by any person.
We hold that the waiver of the privilege makes the information available to the alleged perpetrator as well as the victim (or State). We further hold that it is not essential that the defendant be charged with child abuse or neglect in order for waiver of the privilege to arise; it is sufficient that the actual charges constitute child abuse. Certainly under any interpretation of the statutory definition, sexual battery by a person responsible for the child's welfare would constitute child abuse or neglect. We further hold that the prosecutor cannot avoid the application of the waiver merely by not alleging in the information the relationship between the abuser and the child. The statutory definition makes the relationship itself (the fact not the allegation) sufficient to waive the privilege when the abuser is in fact responsible for the child's welfare.
Here the evidence, although not the allegation, indicated that the one responsible for the children's welfare committed child abuse on those children within his care. We hold the privilege was waived by the statute. We urge the legislature to reexamine section 415.512 in light of this decision, and concur with Judge Sharp that her proposed question should be certified to the supreme court.
REVERSED and REMANDED.
DAUKSCH, COBB, and PETERSON, J.J., concur.
COWART, J., concurs specially, with opinion in which DAUKSCH, J., concurs.
W. SHARP, J., concurs in part and dissents in part, with opinion.
GRIFFIN, J., dissents, with opinion in which GOSHORN, C.J., and DIAMANTIS, J., concur.
DIAMANTIS, J., dissents, with opinion in which GOSHORN, C.J., concurs.
COWART, Judge, concurs specially.
Sexual battery of a child and lascivious assaults upon a child are child abuse. This fact necessitates a reversal in this case. The term "child abuse" should have one common sense meaning that does not vary with the context or the result.
Courts should give statutes a fair reading and not strain at plain language in order to avoid its application to a particular factual instance that falls within the language of the statute but produces a result that appears to be undesirable. The legislature may, if it chooses, revise the language of a statute to have it exclude circumstances the language includes but which, upon further consideration, the legislature may wish to exclude from the application of the statute.
DAUKSCH, J., concurs.
*929 W. SHARP, Judge, concurring in part and dissenting in part.
Although I disagree with the result reached by the majority opinion, I agree that the interpretation of section 415.512, and its proper application in this case is a matter of great public importance and interest, and should be certified to the Florida Supreme Court.[1] This is a case of first impression in this state.
The appellant, Jett, moved this court for rehearing and reconsideration of our prior opinion. I agree his motion has merit, and that we should withdraw our prior decision. It was based on our view that Jett was not a "child abuser" as defined by Chapter 415, because he was an unpaid babysitter in the child-victims' home when the sexual batteries occurred. I would recede from that opinion but still reach the same result (affirming Jett's convictions) because I construe the waiver of the psychotherapist privilege[2] as applicable only to "child abuse or neglect cases," not to sexual battery cases.
Jett was convicted of two counts of capital sexual battery and two counts of lewd and lascivious assault. The victims of the crimes were Jett's sister's three daughters, ages nine, seven and five, and the offenses were committed while he was visiting in their home. Jett argues the trial court erred in ruling that his attorney could not depose a psychotherapist and a psychologist who evaluated and treated the children regarding their communications with two of the girls.
The psychotherapist-patient privilege, (invoked in this case by the children's mother on their behalf), is set forth in Florida's Evidence Code, section 90.503(2), Florida Statutes (1989). It provides in part:
A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of his mental or emotional condition ... between himself and his psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. This privilege includes any diagnosis made, and advice given by the psychotherapist in the course of that relationship.
Jett argues that this privilege is abrogated in this case by section 415.512, Florida Statutes (1989). This section provides:
415.512 Abrogation of privileged communications in cases involving child abuse or neglect.  The privileged quality of communication between husband and wife and between any professional person and his patient or client, and any other privileged communication except that between attorney and client or the privilege provided in s. 90.505, as such communication relates both to the competency of the witness and to the exclusion of confidential communications, shall not apply to any situation involving known or suspected child abuse or neglect and shall not constitute grounds for failure to report as required by s. 415.504, failure to cooperate with the department in its activities pursuant to ss. 415.502-415.514, or failure to give evidence in any judicial proceeding relating to child abuse or neglect. (emphasis supplied)
Chapter 415 addresses multiple problems in the field of abuse and neglect of the aged, the disabled and children. One problem is getting persons who come in contact with possible victims of such abuse to report it to the appropriate agencies. Accordingly, the statute mandates such reports,[3] and it abrogates some otherwise privileged communications in cases involving abuse, neglect, or exploitation of aged persons or disabled adults and in cases involving child abuse or neglect.[4] It apparently dispenses with the privilege for the suspected abuser's communications as well *930 as those of the claimed victim.[5]
The goal of getting child abuse and neglect cases promptly reported and prosecuted is served by waiving the traditional privilege at issue in this case (i.e., the psychotherapist privilege). But, this is not a child abuse/neglect case or proceeding. Jett was charged and brought to trial for capital sexual battery and lewd and lascivious assault. The abrogation of the psychotherapist privilege provided for in chapter 415 for child abuse and neglect cases is not expressly applicable to criminal prosecutions for sexual battery and lewd assault. It only applies to proceedings "relating to child abuse or neglect."[6]
Chapter 415.503(3) defines child abuse as "harm or threatening harm to a child's physical or mental health or welfare by the acts or omissions of the parent or other persons responsible for the child's welfare." Child abuse may be charged in criminal cases,[7] or it may be a relevant issue in dependency or termination of parental rights case.[8] However, simply because sexual battery may form the basis for a child abuse charge does not convert all sexual battery cases involving children into child abuse cases.[9] If so construed, a close relative who rapes a child will have the benefit of requiring disclosure of the child's statements to his or her psychotherapist, but a stranger who rapes a child under similar circumstances will have no such right. Such an anomalous and unequal application of the law should be avoided. Accordingly, I would affirm the judgment appealed in this cause.
Judge Harris' opinion expresses concern for therapists who are required to report child abuse pursuant to section 415.504, involving all abusers (not just persons responsible for a child's welfare), and all instances not just potential child abuse and neglect cases. He suggests they may be held liable for revealing a confidence, if the "waiver" of the privilege section is construed narrowly as suggested by this dissent. I acknowledge that the reporting provisions are far broader than the waiver, but they cover many categories of persons who have no privileged communication status to start with (for example, school teachers, day care workers, policemen, and nurses). Further, all "mental health professionals" are covered by the reporting requirements as a group, without regard to whether the knowledge of child abuse came to them in the context of a confidential communication made for the purpose of diagnosis or treatment (the only way such communication would be privileged). See section 90.503(2), Florida Statutes (1989). However, the answer to this dilemma, which is purely theoretical for purposes of this case, is section 415.511, which grants immunity from civil or criminal liability to any person "participating in good faith in any act authorized or required by ss. 415.502  415.514, or reporting in good faith any instance of child abuse to any law enforcement agency ..."
If the waiver of confidential communications made by a child to a psychotherapist or physician for the purpose of diagnosis and treatment are broadly waived, as the majority opinion holds, the result will be extremely harmful. Either children will not talk freely to their therapists and diagnosis and treatment may be foreclosed to them, or children who do communicate will be deprived of their right to privacy[10] for no good reason. Only child abusers and rapists will benefit from a broad interpretation of the waiver statute. On balance, I would interpret the waiver as narrowly as possible.
*931 Because this is a case of first impression concerning the interpretation of section 415.512, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v) I would certify to the Florida Supreme Court the following questions:
(1) DOES SECTION 415.512 ABROGATE THE PSYCHOTHERAPIST-CLIENT PRIVILEGE FOR COMMUNICATIONS BETWEEN THE THERAPIST AND CHILD IN ALL SEXUAL BATTERY CASES WITHOUT REGARD TO WHETHER OR NOT THE ALLEGED BATTERER IS A PERSON RESPONSIBLE FOR THE CHILD'S WELFARE AS DEFINED BY SECTIONS 415.503(3) AND (11)7.(2), OR
(2) DOES THE ABROGATION OF THE PRIVILEGE ONLY APPLY TO CASES INVOLVING "PERSONS RESPONSIBLE FOR A CHILD'S WELFARE" AS DEFINED BY SECTIONS 415.503(3) AND (11), AND IF SO LIMITED TO SUCH PERSONS, IS THE PRIVILEGE ABROGATED IN ALL SEXUAL BATTERY CASES SUCH AS RAPE AND LEWD ASSAULT WHICH INVOLVES SUCH PERSONS AS BATTERERS WITHOUT REGARD TO WHETHER THE JUDICIAL PROCEEDING RELATES TO CHILD ABUSE OR NEGLECT?
GRIFFIN, Judge, dissenting.
The majority concedes that "the legislature probably did not intend, by enacting section 415.512, to subject [a] victim's statements made to mental health providers to discovery under the criminal discovery rule." Nevertheless, the majority contends that this unintended construction must be given the statute because section 415.512 is clear on its face. As the dissent of four judges of this court demonstrates, however, this statute is not clear. "Ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses." 2A Norman J. Singer, Sutherland Statutory Construction § 45.02 at 6 (5th ed. 1992 rev.).
Even if section 415.512 were clear, legislative intent must be given effect even though it may contradict the strict letter of the statute. Vildibill v. Johnson, 492 So.2d 1047, 1049 (Fla. 1986); State v. Ramsey, 475 So.2d 671 (Fla. 1985). See generally Singer, supra § 45.09 at 42. Section 415.512 is one of several statutory provisions, sections 415.502-415.514, Florida Statutes (1989), enacted collectively to provide "comprehensive protective services for abused or neglected children."[1] Section 415.512 cannot be read in isolation; it must be read as part of the statutory scheme. State v. Webb, 398 So.2d 820, 824-25 (Fla. 1981).
The legislative intent in enacting 415.502-415.514 is set forth in section 415.502:
The intent of ss. 415.502-415.514 is to provide for comprehensive protective services for abused or neglected children found in the state by requiring that reports of each abused or neglected child be made to the Department of Health and Rehabilitative Services in an effort to prevent further harm to the child or any other children living in the home and to preserve the family life of the parents and children, to the maximum extent possible, by enhancing the parental capacity for adequate child care.
Within the statutory scheme, the function of section 415.511 and 415.512 is to overcome the twin legal excuses for failing to report suspected child abuse: exposure to civil liability and the obligation of confidentiality. A broad construction of this confidentiality waiver to permit a criminal defendant accused of sexual battery of a child to discover the child's communications with his or her treating psychiatrist or psychologist could have no conceivable child-protective function and may very well be damaging to the child's treatment and recovery.
I am further convinced that the legislature never intended this waiver to extend beyond the specific object of the legislation  the reporting of known or suspected child abuse. The legislative intent is plain: *932 "to provide for comprehensive protective services for abused or neglected children found in this state by requiring that reports be made to the Department of Health and Rehabilitative Services." This statute overrides the privileges otherwise available under Florida law, but only (as the statute says) as to any situation involving known or suspected child abuse, including reporting, cooperation with HRS in carrying out its duties of documentation and investigation of such abuse reports, and the giving of evidence in any judicial proceeding arising out of the reporting of known or suspected abuse.
I concede that two other cases which have considered this confidentiality waiver have (apparently)[2] not perceived the waiver to be this limited, Carson v. Jackson, 466 So.2d 1188 (Fla. 4th DCA 1985); E.H. v. Dep't of Health & Rehabilitative Services, 443 So.2d 1083, 1084 (Fla. 3d DCA 1984), but there is no suggestion this interpretation was directly raised in those cases. In fact, in Carson, (then) Judge Barkett observed:
[T]he legislature, in passing section 415.512, weighed the desirability of encouraging treatment for child abusers against the desirability of discovering them and decided that the latter was more important than the former. (emphasis added).
Carson, 466 So.2d at 1191. Anyone who learns of or suspects child abuse is obliged under this statutory scheme to report it. This includes physicians or psychiatrists, even if they learn of it while treating the abuser or the abused child. No privilege can interfere with the duty to report abuse except the privilege to communicate with one's lawyer or clergy. But this statute was not intended to expose anyone, whether victim or abuser, to ongoing discovery of communications with their treating psychiatrist after disclosure of the abuse. Such a result not only would be manifestly unfair to victims, as in this case, but it is also not fair to the abuser who seeks treatment for his or her mental disorder. Post-discovery treatment would seem impossible when any communication to a treating psychiatrist would be admissible in evidence against the patient in any civil, criminal or other proceeding. It is inconceivable that a health care professional could ethically accept communications from his or her patient without first disclosing that any such communications would be available as evidence against them in any civil or criminal case. The purpose of the section 415.512 statute has been met once the abuse has been discovered and reported. I do not suggest the statute applies only to the first person to report abuse; several reports by several persons may be involved. However, after the abuse is known to HRS the abuser and the abused can seek treatment without interference from this statute.
If the two professionals whose testimony is in issue in this case had reported the abuse, I would agree with the majority that the broad language of the statute abrogates the privilege, even in favor of the alleged abuser. In the present case, however, the children were referred to these psychologists for treatment after the children had disclosed the abuse to their mother and she had reported it to HRS. In my view, this statutory abrogation of privileges in order to require the reporting of abuse has no application at all to these children's communications with their treating psychologist.
GOSHORN, CJ., and DIAMANTIS, J., concur.
DIAMANTIS, Judge, dissenting.
I respectfully dissent from the majority opinion and join in Judge Griffin's dissent because in my opinion her dissent reasonably balances the public policy of requiring child abuse or neglect to be reported with the policy of protecting the child's right to have effective treatment after having been victimized and having suffered a very traumatic experience with long-lasting effects.
A statute must be construed and applied so as to give effect to the evident legislative intent, regardless of whether such construction varies from the statute's literal *933 meaning "if, from a view of the whole law, or from other laws in pari materia the evident intent is different from the literal import of the terms employed to express it in a particular part of the law, that intent should prevail, for that, in fact is the will of the Legislature." Forsythe v. Longboat Key Beach Erosion Control District, 604 So.2d 452, 455 (Fla. 1992) quoting Van Pelt v. Hilliard, 75 Fla. 792, 798-799, 78 So. 693, 694-695 (1918); Griffis v. State, 356 So.2d 297, 299 (Fla. 1978). In Griffis, the Florida Supreme Court relied upon its opinion in Beebe v. Richardson, 156 Fla. 559, 23 So.2d 718, 719 (1945), in which the Court explained:
[W]here the context of a statute taken literally conflicts with a plain legislative intent clearly discernible, the context must yield to the legislative purpose, for otherwise the intent of the lawmakers would be defeated. (Citations omitted).
Griffis, 356 So.2d at 299.
The legislative intent and public policy of sections 415.502-415.514, Florida Statutes (1989) is to require that reports of child abuse or neglect be made to the Department of Health and Rehabilitative Services in order to prevent further harm to the child or other children living in the home and to preserve the family life.[1] In the instant case, the child abuse had been reported by the children's mother to HRS prior to the time that the children were referred to the psychologists for treatment. Because the child abuse had already been reported, the salutary purpose of the statutory scheme has been accomplished and thus, there no longer exists any compelling public policy reason or necessity for abrogating the privilege between the psychologists and their patients.
If the children were referred by the treating psychologists to other professionals for evaluation or treatment, the majority opinion's literal application of the statutory abrogation of the privilege[2] would result in disclosure of the children's communications to those professionals without balancing the necessity to report the child abuse which had been previously reported. The Legislature obviously did not intend to negatively impact the child's psychological evaluation and treatment by requiring unlimited disclosure of confidential communications involving personally sensitive and traumatic experiences when there is absolutely no need to do so. The reasonable and evident legislative intent was to abrogate the privilege to the extent necessary to accomplish the legislative policy of insuring that child abuse be reported. I submit that we should follow this legislative policy and that we should not unnecessarily and unreasonably expand it.
I concur in certifying this matter to the Florida Supreme Court because it involves questions of great public importance.
GOSHORN, C.J., concurs.
NOTES
[1] Courts are without power to construe unambiguous statutes in any way which would extend, modify or limit the express terms or reasonable or obvious implications. Steinbrecher v. Better Construction Co., 587 So.2d 492 (Fla. 1st DCA 1991).
[1] Fla.R.App.P. 9.030(a)(2)(A)(v).
[2] § 415.512, Fla. Stat. (1989).
[3] §§ 415.103; 415.504, Fla. Stat. (1989).
[4] §§ 415.109; 415.512, Fla. Stat. (1989).
[5] The apparent broad application of this statute may be attributable to careless drafting rather than a legislative intent to abrogate the patient-psychotherapist privilege for victims of child abuse for the benefit of the abuser.
[6] § 415.512, Fla. Stat. (1989).
[7] §§ 382.703; 827.04; 827.05, Fla. Stat. (1989).
[8] § 39.40-39.409; §§ 39.46-39.468, Fla. Stat. (1989).
[9] Sexual battery clearly may be the basis for a child abuse charge, but all sexual battery prosecutions involving child victims do not become child abuse cases within the context of chapter 415, or the other statutes cited above.
[10] Art. I, § 23, Fla. Const.
[1] Ch. 79-203, Laws of Fla.
[2] The factual predicate is not fully detailed in either opinion.
[1] § 415.502, Fla. Stat. (1989).
[2] § 415.512, Fla. Stat. (1989).