694 So.2d 55 (1997)
STATE of Florida, Petitioner,
v.
Gregory Lynn PATTERSON, Respondent.
No. 96-2035.
District Court of Appeal of Florida, Fifth District.
April 4, 1997.
Rehearing Denied May 28, 1997.
*56 Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Turner, Assistant Attorney General, Daytona Beach, for Petitioner.
James Russo, Public Defender, and George McCarthy and Brian N. Onek, Assistant Public Defenders, Rockledge, for Respondent.
GOSHORN, Judge.
The State has filed a petition for writ of certiorari contending that the trial court departed from the essential requirements of law when it ordered that communications between the victim and her psychotherapist were subject to discovery by Gregory Lynn Patterson ("Defendant"). We grant the petition and quash the order.
After the State charged Defendant with three counts of sexual battery on a child and two counts of committing a lewd, lascivious or indecent act on a child, Defendant filed a Motion to Disclose Psychotherapist and Counseling Records and Communications, claiming that the patient-psychotherapist privilege was abrogated by section 415.512, Florida Statutes (1994). At a hearing held on the motion, the State argued that disclosure was not required based on an amendment to section 415.512, effective October 1, 1994. See Ch. 94-164, § 64, at 619, Laws of Fla. It offered the testimony of former State Representative Ron Glickman, who was a cochairperson of the subcommittee which sponsored the amendment to section 415.512. Glickman testified that the amendment was in response to a decision of this court, Jett v. State, 605 So.2d 926 (Fla. 5th DCA 1992) (interpreting the statute to authorize a defendant to obtain statements of a victim made to a psychotherapist), and was intended to narrow the waiver of the psychotherapist-patient privilege to include only statements of the alleged perpetrator to a psychotherapist.
In a lengthy and detailed order, the trial court reviewed the statute, amendment and underlying public purpose and held that section 415.512, as amended, is unambiguous and abrogates the psychotherapist-patient privilege as it applies to both the alleged perpetrator and the victim, but only to the extent that the relevant communication concerns the alleged perpetrator. The State filed a timely petition for certiorari review of the trial court's order.[1]

THE LAW
In 1992, section 415.512 read as follows:
The privileged communication between husband and wife and between any professional person and his patient or client ... shall not apply to any situation involving known or suspected child abuse or neglect and shall not constitute grounds for failure to report as required by s. 415.504, failure to cooperate with the department in its activities ... or failure to give evidence in *57 any judicial proceeding relating to child abuse or neglect.
In Jett v. State, 605 So.2d 926 (Fla. 5th DCA 1992) (Jett I), this court held that the statute waived the psychotherapist-patient privilege as to communications of both the perpetrator and the victim. The conviction in Jett I was reversed because the defendant was not allowed to question psychotherapists concerning their communications with the victims. The majority in Jett I urged the legislature to re-examine section 415.512, noting that the contrary interpretation urged by the dissent, which would limit application of the statute to statements of the perpetrator in child abuse and neglect cases only, was reasonable and practical.
The Florida Supreme Court approved the majority opinion in Jett I, stating that if the legislature did not intend the result mandated by the clear language of the statute, the legislature could amend the statute at the next opportunity. State v. Jett, 626 So.2d 691 (Fla.1993) (Jett II). Although the focus of the supreme court opinion was on the type of proceeding to which the waiver applied, rather than on the party to the communication, the supreme court expressly approved this court's decision.
The legislature did amend section 415.512 in 1994, but as sometimes happens, the amendment fails to clarify the statute's meaning.[2] The amended statute, additions underlined, now reads:
The privileged quality of communication between husband and wife and between any professional person and his client or patient ... shall not apply to any communications involving the perpetrator or alleged perpetrator in any situation involving known or suspected child abuse or neglect and shall not constitute grounds for failure to report as required by s. 415.504 regardless of the source of the information requiring the report, failure to cooperate with the department in its activities ... or failure to give evidence in any judicial proceeding relating to child abuse or neglect.
The State argues that the language "shall not apply to any communications involving the perpetrator or alleged perpetrator" means that the privilege is waived only for any communication in which the perpetrator is a participant. Under the State's interpretation, communications between the victim and psychotherapist remain privileged. This interpretation is contrary to that of the trial court, which focused on the content of the communication rather than the parties to the communication. The trial court held that communications between any professional and any client is discoverable, but only to the extent that the communication concerns the perpetrator or alleged perpetrator and in situations concerning known or suspected child abuse or neglect. Under the court's interpretation, the discoverable communications are limited by their subject matter rather than by the position occupied by the participant.
To reach its conclusion, the trial court focused on the word "involving," which appears twice in the amended statute. It determined that in order to be consistent, both uses of "involving" must be interpreted to mean "concerning," finding that "concerning" best substituted for the word "involving" in both places, i.e., any communication "involving" [concerning] the perpetrator and any situation "involving" [concerning] known or suspected child abuse. See generally Goldstein v. Acme Concrete Corp., 103 So.2d 202 (Fla.1958) (it is assumed that the use of the same word in two statutes is intended to mean the same thing). Using this approach, the trial court found that the statute is unambiguous and that the statute requires disclosure of any communication to the psychotherapist concerning the perpetrator.

THE MERITS
After careful review, we find that the meaning of the amended statute is ambiguous. *58 The word "involve" has several definitions. The American Heritage Dictionary, Second College Edition 676 (1985) includes the following meanings for "involve": "1. To contain or include as a part. 2. To have as a necessary feature or consequence; entail. 3. To draw in as a participant; embroil. 4. To occupy or engross; absorb...." Webster's Ninth New Collegiate Dictionary 637 (1989), provides the following definitions: "1 archaic: to enfold or envelop so as to encumber[.] 2 a: to engage as a participant .... b: to oblige to take part .... c: to occupy (as oneself) absorbingly .... 3: to surround as if with a wrapping...." Although these definitions favor the interpretation urged by the State, the meaning of "involving" as used in the statute is unclear.
To settle the ambiguity, we must discern legislative intent; legislative intent is the polestar by which the court must be guided. See City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla.1983); State v. Webb, 398 So.2d 820, 824 (Fla.1981); Osteen v. Morris, 481 So.2d 1287 (Fla. 5th DCA 1986). In Webb, the Florida Supreme Court held that to determine legislative intent, an act must be considered as a whole, including the evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject.[3]See also Foley v. State, 50 So.2d 179, 184 (Fla.1951).
The evil addressed in Chapter 415 is child abuse, neglect and exploitation. Because protection of children is the purpose and intent of the statute, we find that construing the abrogation of the psychotherapist privilege as limited to the statements of the perpetrator would best serve that intent.[4] The timing of the amendment, coming as it did shortly after this court interpreted section 415.512 to require disclosure of a victim's statements to a psychotherapist, lends support to our construction. In Palma Del Mar Condominium Ass'n # 5 of St. Petersburg, Inc. v. Commercial Laundries of West Florida, Inc., 586 So.2d 315 (Fla.1991), the court held that it was appropriate in determining legislative intent to consider amendments to a statute after a judicial interpretation of that statute. See also State v. Smith, 547 So.2d 613 (Fla.1989). As previously stated, in Jett I, this court acknowledged that the legislature may not have intended to make a victim's statements to a mental health care provider discoverable, and urged the legislature to reexamine the section. Similarly, the supreme court in Jett II suggested that the legislature might not have intended the result of the statute's plain language and may wish to amend it. The legislature's amendment shortly thereafter indicates its intent not to abrogate the psychotherapist privilege as it relates to communications of the victim.
We hold that the amended statute does not abrogate the privilege extending to communications between a victim and his or her psychotherapist, contrary to the trial court's interpretation. Accordingly, the trial court's order permitting discovery of these privileged communications is quashed.
PETITION GRANTED; ORDER QUASHED; REMANDED.
HARRIS and GRIFFIN, JJ., concur.
NOTES
[1] The State argues that the trial court's order constitutes a departure from the essential requirements of law because it fails to follow clearly established principles of statutory construction. Certiorari review is appropriate in this instance. See State v. Pettis, 520 So.2d 250 (Fla. 1988) (discussing the fact that certiorari review of pretrial orders in criminal cases is necessary to the fair administration of justice, because in certain situations, an erroneous discovery order may negate the state's ability to prosecute and the damage will be irreparable if a defendant is acquitted and the state cannot appeal); see also State v. Camejo, 641 So.2d 109 (Fla. 5th DCA 1994) (state's petition for certiorari review of order requiring sexual assault victim to submit to psychological evaluation granted and order quashed), approved, 660 So.2d 242 (Fla.1995).
[2] Although the amendment was enacted several years after the commission of the charged offenses and the filing of the information, we find the amendment retroactively applicable under the reasoning of City of Orlando v. Desjardins, 493 So.2d 1027 (Fla. 1986) (if a statute is found to be remedial in nature, it can and should be retroactively applied in order to serve its intended purpose).
[3] The State correctly concedes that the testimony provided by former Representative Glickman did not shed meaningful light on the legislature's intent in amending section 415.512. As stated in Security Feed & Seed Co. v. Lee, 138 Fla. 592, 189 So. 869 (1939), the testimony of individual members of the legislature as to what they intended to accomplish is of doubtful worth in determining legislative intent and may not even be admissible. See also McLellan v. State Farm Mut. Auto. Ins. Co., 366 So.2d 811 (Fla. 4th DCA 1979) (affidavit of legislator stating his view of legislative intent is inadmissible). In addition, Glickman testified that there was no discussion by the committee members of the specific wording of the amendment and agreed that there was no legislative intent reflected in the staff analysis.
[4] While the title of section 415.512 itself is "Abrogation of privileged communications in cases involving child abuse or neglect," which suggests that the evil addressed is the privilege which interferes with reporting of abuse, the title must be read in the light of the statute as a whole. See Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation Dist., 274 So.2d 522 (Fla. 1973).