**Certiorari Granted, No. 34,435, January 10, 2014**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2014-NMCA-020**

**Filing Date:  October 28, 2013**

**Docket No. 32,425**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant,**

**v.**

**JASON STRAUCH,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Duncan Earnest LLC
Theresa M. Duncan
Albuquerque, NM

for Appellee

**OPINION**

**VANZI, Judge.**

**{1}**    The State of New Mexico appeals from the district court's order granting Defendant's motion for a protective order. The question presented is whether Defendant has a privilege to refuse to disclose, and to prevent others from disclosing, confidential communications he made to a licensed social worker for the purpose of diagnosis and

1

treatment. We conclude that Defendant has this privilege pursuant to Rule 11-504 NMRA and can thus prevent both his social worker and his ex-wife from disclosing information he communicated during counseling sessions. In arriving at this result, we conclude that, even if they reasonably suspected that a child was being abused, neither Defendant's social worker nor Defendant's ex-wife was subject to the mandatory reporting requirement set forth in NMSA 1978, Section 32A-4-3(A) (2005) of the Abuse and Neglect Act, because the requirement does not apply to every person and because a social worker providing private counseling is not "acting in an official capacity" within the meaning of Section 32A-4-3(A). Accordingly, we affirm.

## BACKGROUND

**{2}** Defendant was charged with four counts of criminal sexual contact of a minor in the second degree based on allegations that he had sexually assaulted his daughter. The State filed a notice of intent to call witnesses, in which it stated it intended to call Frederick Stearns, a licensed social worker who provided counseling to Defendant. Defendant filed a motion for a protective order seeking to bar the State from obtaining, and Stearns from disclosing, confidential communications made by Defendant to Stearns for the purpose of diagnosis and treatment. The State filed a response to Defendant's motion, along with a motion to compel the disclosure of Defendant's counseling records.

**{3}** The district court granted Defendant's motion following a hearing. The district court found that: (1) Defendant's communications with Stearns are privileged under Rule 11-504; (2) the participation of Defendant's ex-wife, Karen Solomon-Strauch, in some of the counseling sessions did not waive Defendant's privilege; (3) there is no evidence that Defendant otherwise waived his privilege; (4) Stearns is not a mandatory reporter under Section 32A-4-3(A); and (5) because Stearns is not a mandatory reporter under Section 32A-4-3(A), the exception to the privilege set forth in Rule 11-504(D)(4) does not apply.

**{4}** The State filed a motion to reconsider or, in the alternative, to clarify the order granting Defendant's motion for a protective order. Following a hearing, the district court issued an order denying the State's motion to reconsider and partially granting its motion to clarify. The district court ordered that Defendant's ex-wife may testify that Defendant obtained counseling during a specific period of time, but she "is barred from testifying regarding the reasons . . . Defendant sought counseling, the contents of any communications made during counseling sessions in which she was a participant, and the contents of any communications she and . . . Defendant had related to those sessions." This appeal followed.

## DISCUSSION

**{5}** The State contends that the district court erred in granting Defendant's motion for a protective order because Defendant in this case may not invoke the privilege set forth in Rule 11-504(B). Rule 11-504(B) provides, in pertinent part, that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential

2

communications, made for the purposes of diagnosis or treatment." That privilege, however, does not apply to "communications relevant to any information that the physician, psychotherapist or patient is required by statute to report to a public employee or state agency." Rule 11-504(D)(4).

**{6}** Relying on Rule 11-504(D)(4)'s exception to the privilege rule, the State first argues that Defendant cannot invoke the general rule of privilege to prevent Defendant's social worker and his ex-wife from disclosing confidential communications because both the social worker and his ex-wife were subject to the mandatory reporting requirement set forth in Section 32A-4-3(A).[1] The State next argues that Defendant cannot invoke the privilege with respect to his social worker because the Legislature intended to exclude from Rule 11-504(D)(4) any information that a social worker may obtain regarding child abuse.[2]

**{7}** We first consider whether Defendant's social worker and Defendant's ex-wife were subject to the mandatory reporting requirement set forth at Section 32A-4-3(A) of the Abuse and Neglect Act. We conclude that neither was subject to the mandatory reporting requirement and that, therefore, the exception set forth at Rule 11-504(D)(4) is inapplicable. We next consider whether the Legislature intended to exclude from the Rule 11-504(B) privilege any information that a social worker may obtain regarding child abuse. We conclude that it did not.

**{8}** In analyzing these issues, our review is de novo. *See State v. Ryan*, 2006-NMCA-044, ¶ 41, 139 N.M. 354, 132 P.3d 1040 ("The application of Rule 11-504 and the law to the facts is reviewed de novo."); *see State v. Romero*, 2006-NMSC-039, ¶ 6, 140 N.M. 299, 142 P.3d 887 ("Statutory construction is a question of law that is reviewed de novo.").

**A.**  **The Mandatory Reporting Requirement Set Forth in Section 32A-4-3(A) Does Not Apply to Defendant's Social Worker and Defendant's Ex-Wife**

**{9}** Section 32A-4-3(A) of the Abuse and Neglect Act states:

*Every person*, including a licensed physician; a resident or an intern examining, attending or treating a child; a law enforcement officer; a judge

---

[1]The State does not argue on appeal that the district court erred in barring Defendant's ex-wife from testifying with respect to communications she had with Defendant outside of counseling sessions, and we thus do not consider the issue.

[2]The State does not argue on appeal that Defendant cannot claim the privilege set forth in Rule 11-504(B) because he received counseling from a licensed social worker, not a physician or a psychotherapist. Consequently, we do not consider whether a person who is receiving treatment from a licensed social worker can invoke the privilege set forth in Rule 11-504(B).

presiding during a proceeding; a registered nurse; a visiting nurse; a school[]teacher; a school official; *a social worker acting in an official capacity*; or a member of the clergy who has information that is not privileged as a matter of law, who knows or has a reasonable suspicion that a child is an abused or a neglected child shall report the matter immediately to:

    (1)    a local law enforcement agency;

    (2)    the department; or

    (3)    a tribal law enforcement or social services agency for any Indian child residing in Indian country.

(Emphasis added.) The State makes two arguments. First, it argues that both Defendant's social worker and Defendant's ex-wife were subject to the mandatory reporting requirement set forth in this statute because it applies to "every person." Second, the State argues that even if the mandatory reporting requirement does not apply to every person, Defendant's social worker was still subject to the requirement because he was "acting in an official capacity" when he provided counseling to Defendant. We consider each argument in turn.

**1.    The Mandatory Reporting Requirement Does Not Apply to Every Person**

**{10}**    The State contends that the words "every person" mean what they say—that every person is required to report suspected child abuse. According to the State, because both Defendant's social worker and Defendant's ex-wife are people who presumably had a reasonable suspicion that a child was being abused, they were required to report their suspicions pursuant to Section 32A-4-3(A). Defendant, on the other hand, argues that the words "every person" do not actually mean every person, but mean the professionals specifically identified in Section 32A-4-3(A) and others like them. For the reasons that follow, we agree with Defendant.

**{11}**    In interpreting a statute, "[w]e are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350. Our "principal command" is that we should "determine and effectuate the intent of the [L]egislature using the plain language of the statute as the primary indicator of legislative intent." *State v. Juan*, 2010-NMSC-041, ¶ 37, 148 N.M. 747, 242 P.3d 314 (internal quotation marks and citation omitted). "The words of a statute should be given their ordinary meaning, absent clear and express legislative intention to the contrary, as long as the ordinary meaning does not render the statute's application absurd, unreasonable, or unjust." *Id.* (alteration, internal quotation marks, and citation omitted).

**{12}**    Reading the statute in its entirety, we do not believe that the Legislature intended for

4

every person to be subject to the mandatory reporting requirement of the Abuse and Neglect Act and, as a result, we do not give the words "every person" their ordinary meaning. Section 32A-4-3(A) specifically identifies ten categories of people who are subject to the mandatory reporting requirement:

- licensed physician
- resident or intern examining, attending or treating a child
- law enforcement officer
- judge presiding during a proceeding
- registered nurse
- visiting nurse
- schoolteacher
- school official
- social worker acting in an official capacity
- member of the clergy who has information that is not privileged as a matter of law

The above list appears to include those professionals who are most likely to come into contact with—and can effectively identify—abused and neglected children during the course of their professional work. We apply the principle of *ejusdem generis* to this statute, and conclude that, despite the use of the words "every person," the Legislature intended to impose an affirmative duty to report child abuse or neglect only on these professionals and others like them. To do otherwise would render the inclusion of these specific categories of professionals essentially meaningless.

**{13}** As our Supreme Court has explained, "New Mexico courts have long recognized the *ejusdem generis* principle of statutory construction, that where general words follow words of a more specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *State v. Nick R.*, 2009-NMSC-050, ¶ 21, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citation omitted). While it is less common, we agree with Defendant that this principle is applicable where the specific words follow the general, not just where the general words follow the specific. *See, e.g.*, *McClellan v. Health Maint. Org. of Pa.*, 686 A.2d 801, 806 (Pa. 1996) ("Where the opposite sequence is found, i.e., specific words following general ones, the U.S. Supreme Court and the courts from several other jurisdictions recognize that the doctrine is equally applicable, and restricts application of the general term to things that are similar to those enumerated.").

**{14}** We recognize that the principle of *ejusdem generis* "is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty" and that the principle "may not be used to defeat the obvious purpose of legislation." *State v. Johnson*, 2009-NMSC-049, ¶ 20, 147 N.M. 177, 218 P.3d 863 (quoting *Gooch v. United States*, 297 U.S. 124, 128 (1936)). We do not believe that our reading defeats the obvious purpose of Section 32A-4-3(A), which is to protect children.

**{15}** The reporting requirement, which was not originally mandatory, first appeared in 1965, when the Legislature enacted the Act Relating to the Protection of Children (the Act). 1965 N.M. Laws, ch. 157. The Act provided that certain categories of professionals "may report" to the district attorney their suspicions of child abuse, neglect, or starvation. 1965 N.M. Laws, ch. 157, § 2. The purpose of the Act was "to provide for the protection of children who have had physical injury inflicted upon them and who, in the absence of appropriate reports concerning their condition and circumstances, may be further threatened by the conduct of those responsible for their care and protection." 1965 N.M. Laws, ch. 157, § 1. Though the purpose is stated broadly, in our view the Legislature intended to strike a balance, imposing a duty on only those people who were most likely to encounter abused and neglected children in their professional capacities. In that vein, we note that Section 32A-4-3(A) does not prohibit anyone from reporting their suspicions but simply does not place upon them an affirmative duty.

**{16}** Our reading of the mandatory reporting requirement is supported by the fact that the statute imposes criminal penalties on those who are subject to the reporting requirement and fail to report. *See* § 32A-4-3(F) (stating that a person who violates Section 32A-4-3(A) is guilty of a misdemeanor). Because this statute is defining criminal conduct—the failure to report a reasonable suspicion of child abuse or neglect—we construe any doubts about its applicability in favor of lenity. *See State v. Ogden*, 1994-NMSC-029, ¶ 25, 118 N.M. 234, 880 P.2d 845 ("Statutes defining criminal conduct should be strictly construed, and doubts about construction of criminal statutes are resolved in favor of lenity."). In any event, we note that this statute does not give a clear and unequivocal warning to everyone that they could be exposed to criminal penalties for failing to report a reasonable suspicion of child abuse or neglect. *See In re Gabriel M.*, 2002-NMCA-047, ¶ 20, 132 N.M. 124, 45 P.3d 64 (noting the rule of lenity "requires us to narrowly construe a penal statute to give clear and unequivocal warning in language that people generally would understand concerning actions that would expose them to penalties").

**{17}** In support of its broad reading of the words "every person," the State cites *State v. Mendez*, 2010-NMSC-044, 148 N.M. 761, 242 P.3d 328, and *Wilcox v. New Mexico Board of Acupuncture & Oriental Medicine*, 2012-NMCA-106, 288 P.3d 902. We are not persuaded by the application of either case here. In *Mendez*, our Supreme Court noted in a parenthetical that Section 32A-4-3(A) "requir[es] every person, including medical professionals, who suspect that a child has been abused or neglected to immediately report the matter to authorities." *Mendez*, 2010-NMSC-044, ¶ 37. The Court did not discuss Section 32A-4-3(A) in any meaningful way, let alone in depth, and we will not read the parenthetical as an authoritative interpretation supporting the State's view. *See Rocky Mountain Life Ins. Co. v. Reidy*, 1961-NMSC-100, ¶ 17, 69 N.M. 36, 363 P.2d 1031 (noting that language unnecessary to resolution of issues is dictum and "not binding as a rule of law").

**{18}** In *Wilcox*, we noted that "[i]t is true that a statute which uses the word 'including' . . . is not limited in meaning to that included" and cited a New Mexico Supreme Court opinion for the proposition that "the use of the word 'includes' to connect a general clause

6

to a list of enumerated examples demonstrates a legislative intent to provide an incomplete list of activities." 2012-NMCA-106, ¶ 13 (alterations, internal quotation marks, and citations omitted). However, in that case, we went on to state that "the doctrine of *ejusdem generis* holds that where general words follow words of a more specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *Id.* (internal quotation marks and citation omitted). That is the principle of statutory construction applicable here, and as discussed above, it is in accordance with legislative intent.

**{19}** Consequently, we conclude that neither Defendant's social worker nor Defendant's ex-wife was subject to the mandatory reporting requirement set forth in Section 32A-4-3(A). The statutory requirement does not apply to every person, but instead applies to the ten categories of people listed and other professionals or government officials who are likely to come into contact with abused and neglected children during the course of their professional work.

## 2. Defendant's Social Worker Was Not Acting in an Official Capacity

**{20}** The State next argues that even if the mandatory reporting requirement does not apply to every person, Defendant's social worker was still subject to the requirement because he was "a social worker acting in his official capacity" when he provided counseling to Defendant. The State claims that a social worker is acting in an official capacity within the meaning of Section 32A-4-3(A) "when he is working as a counselor or in his capacity as a professional." Defendant counters that his social worker was not acting in an official capacity when he provided counseling to Defendant because the phrase "official capacity" is intended to include only social workers acting as government employees or contractors. Once again, we agree with Defendant.

**{21}** The term "official capacity" is not defined in the Abuse and Neglect Act. *See* NMSA 1978, § 32A-4-2 (2009). We thus look to the dictionary definition for guidance. *See State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830 ("Under the rules of statutory construction, we first turn to the plain meaning of the words at issue, often using the dictionary for guidance."); *see also Nick R.*, 2009-NMSC-050, ¶¶ 18-19 (interpreting the word "weapons" by consulting dictionaries).

**{22}** *Black's Law Dictionary* defines "official" as "[o]f or relating to an office or position of trust or authority" or "[a]uthorized or approved by a proper authority." *Black's Law Dictionary* 1195 (9th ed. 2009). Similarly, the New Oxford American Dictionary defines "official" as "of or relating to an authority or public body and its duties, actions, and responsibilities[.]" *New Oxford Am. Dictionary* 1217 (3d ed. 2010). These definitions suggest that the word "official" does not have the equivalent meaning of the word "professional," as the State contends. Instead, unlike "professional," the word "official" includes a public element, connoting a certain authority.

7

**{23}** This reading is supported by the Legislature's use of the word "professional" rather than "official" in other statutes. For example, in NMSA 1978, Section 61-31-24 (1989), which is part of the Social Work Practice Act, the Legislature sets forth the circumstances under which a social worker "may disclose any information he has acquired from a person consulting him in his *professional* capacity." Section 61-31-24(B) (emphasis added); *see* NMSA 1978, § 61-31-1 (2006) (short title); *see also* NMSA 1978, § 61-9-18 (1989) (describing the privilege afforded to communications made to licensed psychologists or psychologist associates "in the course of [their] professional employment").

**{24}** Our conclusion that the words "official" and "professional" are not synonymous in this case is also supported by the history and background of Section 32A-4-3(A), which we may consider in determining legislative intent. *See In re Gabriel M.*, 2002-NMCA-047, ¶ 15 (comparing current version of a statute with earlier versions to help determine legislative intent). As discussed above, the reporting requirement first appeared in 1965, when the Legislature enacted the Act Relating to the Protection of Children. 1965 N.M. Laws, ch. 157. The Act provided that certain categories of people "may report" to the district attorney their suspicions of child abuse, neglect, or starvation. 1965 N.M. Laws, ch. 157, § 2. The listed categories of people included "any school teacher or social worker acting in his or her official capacity." *Id.*

**{25}** In 1973, the Legislature repealed the reporting requirement in the 1965 Act and enacted a different reporting requirement in the newly created Children's Code. 1972 N.M. Laws, ch. 97. This new reporting requirement, now mandatory, stated, in pertinent part:

> Any licensed physician, resident or intern examining, attending, or treating a child, any law enforcement officer, registered nurse, visiting nurse, *school teacher or social worker acting in his or her official capacity*, *or any other person* having reason to believe that serious injury or injuries have been inflicted upon a child as a result of abuse, neglect or starvation, shall report the matter immediately[.]

1973 N.M. Laws, ch. 360, § 2(A) (emphasis added). The Children's Code further made the failure to report suspected child abuse a misdemeanor. 1973 N.M. Laws, ch. 360, § 2(C).

**{26}** In 1993, the Legislature once again repealed the reporting requirement and enacted a new reporting requirement in the newly created Child Abuse and Neglect Act. 1993 N.M. Laws, ch. 77, § 97. The new reporting requirement applied to "[e]very person, including but not limited to . . . a school official or social worker acting in an official capacity." 1993 N.M. Laws, ch. 77, § 97(A). In 2003, the Legislature made various changes, including deleting the words "not limited to" after "including." 2003 N.M. Laws, ch. 189, § 1.

**{27}** A review of the legislative history above supports our conclusion that the mandatory reporting requirement was intended to apply to social workers working in school and other government settings only. To view it any other way would make little sense. We note, for

example, that the mandatory reporting requirement does not list other professionals who provide therapy and counseling, such as psychologists or psychotherapists who may be privy to confidential communications about abuse and which are made for the purpose of diagnosis and treatment. And while the list does include clergy, who do provide counseling, their duty to report is expressly limited to "information that is not privileged as a matter of law." Section 32A-4-3(A).

{28}    We conclude that the mandatory reporting requirement set forth in Section 32A-4-3(A) was intended to apply principally to social workers in school and other government settings, and we discern no basis for expanding the provision to apply to social workers working in a professional capacity as a mental health care provider. We thus agree with Defendant that the social worker from whom he obtained counseling is not subject to the mandatory reporting requirement.

**B.      The Legislature Did Not Intend to Exclude From the Rule 11-504 Privilege Any Information That a Social Worker May Obtain Regarding Child Abuse**

{29}    The State next argues that Defendant cannot invoke the privilege set forth at Rule 11-504(B) to prevent disclosure of confidential communications by his social worker because the Legislature intended to exclude from this privilege any information that a social worker may obtain regarding child abuse. The State relies on two statutes in support of this argument, Section 61-31-24(C) and NMSA 1978, Section 32A-4-5 (2009). Defendant contends that these two statutory provisions are not applicable to criminal proceedings, and we agree.

{30}    Section 61-31-24(B) sets forth the circumstances under which a social worker "may disclose . . . information he has acquired from a person consulting him in his professional capacity." Section 61-31-24(C) states:

> Nothing in this section shall be construed to prohibit a licensed social worker from disclosing information in court hearings concerning matters of adoption, child abuse, child neglect or other matters pertaining to the welfare of children as stipulated in the Children's Code or to those matters pertaining to citizens protected under the Adult Protective Services Act.

(Citations omitted.) The State contends that this exception is applicable here because "[t]he present case involves a court hearing concerning child abuse." The State's argument ignores the plain language of this statute, which limits the exception to court hearings arising under the Children's Code or the Adult Protective Services Act, neither of which is at issue here. We therefore will not depart from the plain language of Section 61-31-24(C), and we decline to accept the State's invitation to interpret the Social Work Practice Act to apply to criminal proceedings.

{31}    The State also relies on Section 32A-4-5 of the Abuse and Neglect Act, which

9

governs the admissibility of reports into evidence and provides, in pertinent part:

> In any proceeding alleging neglect or abuse under the Children's Code resulting from a report required by Section 32A-4-3 . . . or in any proceeding in which that report or any of its contents are sought to be introduced in evidence, the report or its contents or any other facts related thereto or to the condition of the child who is the subject of the report shall not be excluded on the ground that the matter is or may be the subject of a physician-patient privilege or similar privilege or rule against disclosure.

Section 32A-4-5(A) (citation omitted). The above provision makes clear that it applies in two types of proceedings: (1) proceedings alleging neglect or abuse under the Children's Code that result from a report filed pursuant to Section 32A-4-3, and (2) proceedings in which a report filed pursuant to Section 32A-4-3 or any of its contents are sought to be introduced into evidence. As we have noted with respect to the Social Work Practice Act, this provision does not apply because this is a criminal case. It is not a case arising under the Children's Code, and it is undisputed that Defendant's social worker did not file a report pursuant to Section 32A-4-3.

**CONCLUSION**

**{32}** For the reasons discussed above, we conclude that Defendant has a privilege to refuse to disclose and to prevent his licensed social worker and ex-wife from disclosing confidential communications he made to his social worker for the purpose of diagnosis and treatment. The exception set forth in Rule 11-504(D)(4) does not prevent Defendant from invoking the privilege because neither Defendant's social worker nor his ex-wife was subject to the reporting requirement set forth in Section 32A-4-3(A). We affirm the district court's grant of Defendant's motion for a protective order.

**{33}  IT IS SO ORDERED.**

         _____

         **LINDA M. VANZI, Judge**

**I CONCUR:**


_____

**CYNTHIA A. FRY, Judge**

**J. MILES HANISEE, Judge (dissenting)**

**HANISEE, Judge (dissenting).**

**{34}** I consider the term "every person," as articulated in Section 32A-4-3(A), to mean any person who is aware of or reasonably suspects that a child is being abused. Under the statute's plain directive, all such persons are duty-bound to report the ill-treatment of children to law enforcement or child protection authorities. The majority having concluded otherwise, I respectfully dissent.

**{35}** Initially, I note that the language of the statute itself seems unmistakable. When there exists clarity of legislative intent, New Mexico caselaw compels a statute's effectuation in a manner that avoids unnecessary interpretation and gives effect to language that is simple and unambiguous. *See United Rentals Nw., Inc. v. Yearout Mech.*, 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 ("The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule[.]" (internal quotation marks and citation omitted)). As the Majority Opinion points out, "[t]he words of a statute should be given their ordinary meaning, absent clear and express legislative intention to the contrary, as long as the ordinary meaning does not render the statute's application absurd, unreasonable, or unjust." *Juan*, 2010-NMSC-041, ¶ 37 (alteration, internal quotation marks, and citation omitted). Thus, in following the plain meaning rule, we will not read into a statute language that isn't there, "especially when it makes sense as it is written." *Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 (internal quotation marks and citation omitted).

**{36}** Section 32A-4-3(A) commences with the chosen phrase "Every person[.]" It then identifies and imposes upon a limited subset of such an otherwise unlimited grouping—those aware of crimes perpetrated upon a child—the responsibility to notify public officials that are authorized to stop the commission of, and protect victims from, such uniquely pernicious offenses. *See id.* No provision within the statute directly excludes any individual from the responsibility of mandated reporting. *See* § 32A-4-3. Nevertheless, the Legislature chose to emphasize the reporting responsibilities of certain categories of individuals by expressly announcing their inclusion within the general statutory directive. It is my view that this expression emphasized the breadth of, and does not impliedly constrict, the statute's sphere of enforceability.

**{37}** The Majority Opinion stumbles on what I perceive to be an ancillary and purposefully incomplete list of persons whose duty to report exists despite their employment in specified professions. By directly identifying some, but not all, to whom Section 32A-4-3 applies, the Legislature intended to make clear the statute's application to people who may not otherwise be understood to fall within the broader penumbra of "every person." It is telling that the professional responsibilities of each such specifically identified person may more frequently render them privy to information regarding child abuse, or would, in some instances, bestow a conflicting legal privilege or responsibility of confidentiality. Yet, like anyone else, they too are required to report known or reasonably suspected instances of child abuse. With the lone exception of legally privileged communications made to members of the clergy, there is simply no indication of exemption to be found within Section 32A-4-3(A). Based on established principles of statutory construction, and considering the nature

11

of the occupations expressly required to comply with this section of the Abuse and Neglect Act, I conclude that the language "every person" in fact means everyone, as would ordinarily be understood.

**{38}** Indeed, my approach is consistent with our own past observation regarding the breadth of the reporting requirement of this very statute. In *In re Candice Y.*, 2000-NMCA-035, ¶¶ 35-36, 128 N.M. 813, 999 P.2d 1045, we held that a person employed as a counselor cannot be prohibited from disclosing information regarding child abuse pursuant to NMSA 1978, Section 61-9A-27(C) (1993). In so ruling, we cited Section 32A-4-3, which we observed to "appear to require [a] counselor to report abuse or neglect to an appropriate authority and to remove any privilege that might otherwise apply here." *In re Candice Y.*, 2000-NMCA-035, ¶ 36. Notably, the Rule 11-504 privilege we determined to be "removed" by application of Section 61-9A-27(C), *see In re Candice Y.*, 2000-NMCA-035, ¶ 36, is the same privilege the majority determines today to be unaffected by Section 32A-4-3. *See also Mendez*, 2010-NMSC-044, ¶ 37 (noting without deciding that Section 32A-4-3(A) "requir[es] every person, including medical professionals . . . to immediately report [child abuse] to authorities").

**{39}** My view is also reinforced by the fact that, like New Mexico, other states have enacted and interpreted similarly inclusive language in this context to apply to everyone. Both Texas and Florida have promulgated similar statutes that mandate all individuals, whether professional or layperson, to report crimes of child abuse or neglect to appropriate authorities. *See* Tex. Family Code Ann. § 261.101(a) (West 2013) ("*A person* having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter." (emphasis added)); Fla. Stat. Ann. § 39.201(1)(a-c) (West 2013) ("*Any person* who knows or has reasonable cause to suspect that a child is abused, abandoned, or neglected . . . shall report such knowledge or suspicion to the department in the manner prescribed." (emphasis added)). Courts of both states have interpreted their legislatures' own broadly inclusive language to straightforwardly mean that people—any people—aware of child abuse are required to report it. *See Rodriguez v. State*, 47 S.W.3d 86, 89 (Tex. Ct. App. 2001) (concluding that those living in the same apartment with an abused child and had witnessed the abuse but failed to report it fell within the requirements of the mandatory reporting statute); *Jett v. State*, 605 So. 2d 926, 927 (Fla. Dist. Ct. App. 1992) (interpreting Fla. Stat. Ann. § 415.504(a)(1989), now renumbered as Section 39.201, and concluding that "[i]t appears that the legislature, in order to assure that the abuse is reported, has determined that everyone who has knowledge of [abuse] should report it"). Like in Texas and Florida, the "every person" language in our statute manifests our Legislature's express intent to create an affirmative duty on all persons to report child abuse or neglect to appropriate authorities.

**{40}** As well, I note that the Majority Opinion's reliance on the doctrine of *ejusdem generis* is misplaced. *Ejusdem generis* instructs that "where general words *follow* an enumeration of persons or things of a particular and specific meaning, the general words are

12

not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *State v. Office of Pub. Defender ex rel. Muqqddin*, 2012-NMSC-029, ¶ 29, 285 P.3d 622 (emphasis added) (internal quotation marks and citation omitted). *Black's Law Dictionary* provides a simple example to illustrate this doctrine, using the phrase "horses, cattle, sheep, pigs, goats, or any other farm animals[.]" *Black's Law Dictionary* 594 (9th ed. 2009). The entry notes that despite the seeming breadth of the category of "any other farm animals," this phrase would likely include only "four-legged hoofed mammals typically found on farms, and thus would exclude chickens" because "the general word or phrase will be interpreted to include only items of the same class as those listed." *Id.*

**{41}** This entry is in accord with our Supreme Court's interpretation of the burglary statute in *Muqqddin*. *See Muqqddin*, 2012-NMSC-029, ¶¶ 29-31. That statute contains a string of specific listings *followed by* a general term: "Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling[,] or other structure[.]" NMSA 1978, § 30-16-3 (1971). By limiting the meaning of the word "structure" to "other, similarly situated words in that same statute[,]" our Supreme Court rejected a prior interpretation that failed to properly apply *ejusdem generis*. *See Muqqddin*, 2012-NMSC-029, ¶ 31.

**{42}** But the statute at issue in this case is constructed differently than the burglary statute or other statutes to which *ejusdem generis* is intended to apply. Section 32A-4-3(A) is not a statute where general words follow the enumeration of words with a specific meaning. Rather, it first invokes a general term, "every person," followed by the list of specific professionals. *Id*. Thus, this statute is not one that structurally falls within the purview of those to which *ejusdem generis* should be applied. Because our Supreme Court has recognized that "the use of the word 'includes' to connect a general clause to a list of enumerated examples demonstrates a legislative intent to provide an incomplete list of activities[,]" *United Rentals Nw.*, 2010-NMSC-030, ¶ 13, we should decline to interpret the reporting statute as applying to anything other than its preceding generally defined category: "every person[.]"

**{43}** Lastly, assuming without agreeing that the principle of *ejusdem generis* applies to this statute, the Majority Opinion's reliance on *Wilcox* lends no meaningful support to its conclusion. *Wilcox* states that "[w]e have previously looked to a dictionary definition of the word that precedes 'including' to characterize the types of examples consistent with that key word." 2012-NMCA-106, ¶ 13. However, in this case, if we look to the word that precedes "including," we find the word "person." If we then follow the *Wilcox* illustration and define "person" as set forth in *Black's Law Dictionary*, we are informed that each is "a human being" and are provided with examples. *Black's Law Dictionary* 1257 (9th ed. 2009). Therefore, even were we to apply the doctrine of *ejusdem generis*, as in *Wilcox*, we would still reach the same conclusion that the statutory language of "every person" applies to all people.

**{44}** On the heels of its *ejusdem generis* analysis, the Majority Opinion evokes the rule

13

of lenity to conclude that because the reporting requirement is enforced by application of criminal liability, the statute's directive does not constitute an affirmative duty applicable to all. However, like New Mexico, Texas penalizes all non-reporters on the misdemeanor level. *See* Tex. Family Code Ann. § 261.109 (West 2013). Even more rigidly, Florida imposes criminal penalties on any person who fails to report at the felony level. *See* Fla. Stat. Ann. § 39.205(1) (West 2013). I do not agree that the fact that a non-reporter in New Mexico may be subjected to a misdemeanor penalty provides support to the Majority Opinion's constrictive reading of the statute. As well, our Supreme Court has cautioned that the rule of lenity applies only to statutory language in which "insurmountable ambiguity persists regarding the intended scope of a criminal statute." *Ogden*, 1994-NMSC-029, ¶¶ 25-26 (stating also that "[a] criminal statute is not ambiguous for purposes of lenity merely because it is possible to articulate a construction more narrow than that urged by the Government" (emphasis, alteration, internal quotation marks, and citation omitted)). Here, it is the Majority Opinion itself that creates ambiguity by its use of the inapplicable principle of *ejusdem generis* to unnecessarily deconstruct the phrase "every person."

**CONCLUSION**

**{45}**     For the foregoing reasons, I would reverse the district court's order.

_____
**J. MILES HANISEE, Judge**

**Topic Index for *State v. Strauch*, No. 32,425**

**CRIMINAL LAW**
Child Abuse and Neglect
Insanity or Mental Illness
Sexual Exploitation of Children

**EVIDENCE**
Admissibility of Evidence
Privileges
Spousal Testimony

**REMEDIES**
Protective Order

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction