A. H. BECHTOL, doing business as an individual and under the name of FLORIDA COIN MACHINES EXCHANGE, v. J. M. LEE, as Comptroller, and FRANK STOUTAMIRE, as Sheriff of Leon County, et al.

176 So. 265.
En Banc.
Opinion Filed September 30, 1937.

*H. H. Wells, B. K. Roberts* and *William K. Whitfield,* all of Tallahassee, for Appellant;

*Waller & Meginniss, LeRoy Collins, Emmet Safay* and *Cary D. Landis,* Attorney General, and *W. P. Allen,* Assistant Attorney General, for Appellees;

*Edward S. Hemphill* and *Nathan J. Roberts,* as *Amici Curiae.*

STATEMENT BY CHAPMAN, J.—On September 21, 1937, plaintiff filed his bill of complaint in the Circuit Court of Leon County, Florida, against J. M. Lee, as Comptroller of the State of Florida, and Frank Stoutamire, as Sheriff of Leon County, Florida, and sheriffs of many other counties of Florida, seeking a restraining order against the defendants. It is alleged in the bill of complaint, among other things, that the plaintiff, subsequent to the enactment of Chapter 17257, Acts of 1935, session of the Legislature, purchased and otherwise became the owner of 2,305 slot machines as defined in *supra* at an approximate cost of $150,550.00, and the machines are situated in the County of Leon and other counties of Florida; that a fair market value of said property is the sum of $56,300.00. The plaintiff has paid, or caused to be paid, State, county and municipal, operator's and occupational licenses and State *ad valorem* taxes required to be paid under the laws of Florida which permit and authorize the operation thereof, inclusive

of the machines situated in Leon County, until October 1, 1937.

The plaintiff further alleges that the Legislature of the State of Florida, at its 1937 session, enacted Senate Bill No. 399, and by Section 1 thereof it was made unlawful:

"(a) To manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away, or permit the operation of, or for any person to permit to be placed, maintained, or used or kept in any room, space, or building owned, leased or occupied by him or under his management or control, any slot machine or device or any part thereof as hereinafter defined; or

"(b) To make or to permit to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value."

And by Section 2 thereof defines under the terms of said Act a slot machine, Section 2 being:

"Any machine or device is a slot machine or device within the provisions of this Act if it is one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit,

allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device, even though it may, in addition to any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value."

Section 6 of this Act provides for a forfeiture of the said property described in Section *supra,* and otherwise provides for the seizure of such money, if any, appearing therein at the time of seizure.

Section 12 thereof being: "This Act shall take effect and become operative on the 1st day of October, A. D. 1937." It is alleged that the Sheriff of Leon County, and other officers, unless restrained, under Senate Bill No. 399 enacted by the 1937 session of the Legislature, will seize and confiscate the machines of the plaintiff situated in Leon County immediately upon October 1, 1937, the plaintiff will not have an opportunity to move or transport the machines to other sections of the United States prior to the contemplated seizure by the Sheriff under the Acts *supra;* that it is not the intention of the plaintiff to operate or display said machines, but in each particular to comply with Senate Bill No. 399.

The plaintiff upon notice applied for writs of injunction against said defendant and upon a hearing before the lower court an order was made sustaining a motion to dismiss as to the Comptroller, J. M. Lee. Likewise, the court sustained and did enter an order of dismissal of the bill of complaint in behalf of Frank Stoutamire, as Sheriff of Leon County, Florida. An appeal was taken from the order of

dismissal and the cause is here for a review of the order of dismissal entered by the lower court. An application of plaintiff for a constitutional writ of injunction was issued pursuant to Article V of Section 5 of the Constitution of Florida, directed to Frank Stoutamire, as Sheriff of Leon County, Florida, restraining and enjoining him from interference with or the removal of said machines until the further order of the Court.

WHITFIELD, J.—The first provision in the State Constitution is that:

"All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety." Sec. 1, Declaration of Rights.

Section 4 of the Declaration of Rights provides that:

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."

Chapter 17257, Acts of 1935, commonly known as the Slot Machine Act, made it unlawful to "set up for operation, operate, lease, or distribute for the purpose of operating, any coin device as defined in the Act, without first having obtained a license therefor." The "Act, however, does not apply to machines or devices being displayed or demonstrated by manufacturers, distributors, salesmen and agents for sale purposes." Other provisions of the Act prescribed the method of obtaining a license for the operation of the described machines or devices and the amounts to be paid for the operation of the machines or devices. A violation of any of the provisions of the Act is made a criminal of-

fense punishable by a fine or imprisonment in the county jail or by both fine and imprisonment.

In this case the machines are by the State, under Chapter 17257, licensed to be operated until midnight of ·September 30, 1937, and the tax for that period was exacted by the State.

An injunction was sought in the trial court to restrain the threatened seizure by the sheriff of the machines immediately upon the expiration of the license period at twelve o'clock P. M., September 30, 1937, under the provisions of the Act of 1937, Senate Bill No. 399, approved by the Governor, May 29, 1937, to become effective "on the 1st day of October, A. D. 1937," which Act is sufficiently set out in the statement.

The principal question presented is whether the sheriff may lawfully seize the slot machines, as for a violation of Chapter 18143, Acts of 1937, Senate Bill No. 399, immediately at the expiration of the license period at twelve o'clock P. M., September 30, 1937, without giving a reasonable opportunity to remove the machines from the State, when no unlawful use of the machines in the State is threatened.

The Act of 1935 authorized the licensing of the machines upon the payment of the license taxes, thereby recognizing them as private property and authorizing their possession and operation in this State. The Act of 1937 does not expressly repeal the Act of 1935, but does provide that "the right of property in and to any machine, apparatus or device as defined" in the Act of 1935, "is hereby declared not to exist in any person, association of persons, or corporations, and the same shall be forfeited." There is no express or fairly implied provision in the Act of 1937, that seizures of the machines shall be made immediately if the

*possession* of the machines continues after midnight September 30, 1937, without giving a reasonable opportunity to *bona fide* remove the machines from the State after the hour the licenses expire. Criminal prosecutions follow the seizure of the slot machines after September 30, 1937. The statute contemplates the removal of the machines from the State after the licenses expire; and the State, under the statute, exacted license taxes for the continued operation of the machines, and thereby contemplated operation of the machines until the last minute of the license period.

Of necessity the statute contemplated that the machines it had authorized to be licensed to operate in the State for a tax consideration, should be removed from the State without needless delay after the expiration of the license period. Otherwise bad faith may be attributed to the State in allowing the machines to be lawfully operated in the State under licenses for which taxes were paid to the State for operation till the last minute of the license period, and then immediately seize machines upon a charge of crime for having possession of the machines in the State when they could not possibly be removed from the State *eo instanti* of the expiration of the license period, even though after that period they were not property under the terms of the statute. Such a construction of the Act of 1937 would make it conflict with the property rights secured by the Constitution.

While it is true that the Act of 1937 was approved May 28, 1937, it does not become operative until October 1, 1937, and notice was afforded by the statute that it would be unlawful to have or use the machines in this State after September 30, 1937. Such notice is necessarily affected by the granted right of licensed authority for a tax consideration to continue the possession and operation of the machines till the last minute of September 30, 1937, it being

obvious that the exercise of 'the licensed right to operate upon taxes paid for the full period would make it impossible to remove the machines from the State before October 1, 1937, which comes the minute after the paid license period expires. The State had no right to assume that the entire license period would not be used in operating the machines; and the statute clearly contemplates operation during the entire period covered by the license paid for, with an implied right to remove the machines from the State without needless delay or unlawful use of the machines after September 30, 1937.

The Constitution *expressly commands "that right and justice shall* be administered" by "all courts in this State." The Court here adjudges that in this case *right and justice* require a reasonable time to be given for the prompt removal, without needless delay or unlawful use, of the machines referred to in the statute, after midnight tonight, September 30, 1937, and that such removal does not violate, but is in accord with the Constitution and laws of this State.

The decree appealed from is accordingly reversed and the cause immediately remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

BUFORD, J. (concurring specially).—In the case of Lee, et al., v. City of Miami, 121 Fla. 93, 163 Sou. 486, this Court construed and held valid Chapter 17257, Acts of 1935, saying:

"Chapter 17257 on its face does not clearly offend against organic law, nor do the coin-operating vending machines described in Section 2, the use of which is restrained, constitute lotteries *per se*. It may be that some of them or

possibly all of them in their operation will become such, but we leave that question to be determined when a specific case arises.

To such holding I dissented, saying:

"There is no ambiguity in our constitutional provision prohibiting lotteries and we know of no rule of construction which will permit us to determine that the intent of the Constitution is that the section should apply to certain classes of lotteries and not to others. It may have been that the framers of the Constitution had in mind a particular kind of lottery when they adopted this provision. It occurs to me that the definition given by the Supreme Court of Michigan in the case of Price v. Elliott, *supra,* is a clear, concise and logical definition of 'lottery' which should be applied in determining what is meant by this section of our Constitution, that is: 'A lottery is a scheme by which a result is reached by some action or means taken in which result man's choice or will has no part, nor can human reason, sagacity, foresight or design enable him to know or determine such result until the same has been accomplished.' * * *

"We have repeatedly held that what everybody knows this Court is assumed to know. Therefore it follows that we are assumed to know that the machine described in paragraph (1) of Section 2 of the Act is a machine which constitutes a gambling device and the use of which for such purposes has infected the whole community and country. They are found in operation in many places in almost every community. They constitute an habitual and almost ever present lure to the gambling instinct of those members of the public who are least able to indulge such inclination. It is also a matter of general knowledge that such machines are referred to as one-armed bandits because they are so

constructed that there is nowhere an even chance for the player as against the operator; that they constantly pay large weekly dividends to the operator and that in the operation thereof by the player there is involved no element either of judgment or of skill." * * *

"Having reached this conclusion, I think we should hold that the operation of the machines constructed and to be used in the manner provided for in paragraph numbered (1) of Section 2 of the statute would constitute lotteries, and that, therefore, the Act offends against Section 23, Article III, of the Constitution and is void."

Experience throughout the State during the past two years has abundantly justified what I said in that opinion.

It is now generally conceded that no more generally damning influence has been applied to the honesty, integrity and frugality of the boys and girls and men and women of this State than that which was foisted upon them by the provisions of Chapter 17257, *supra*. It is also generally conceded that to hold the operation of these devices to be merely a lottery is being charitable. But I must concur in the conclusion reached in the opinion prepared by Mr. Presiding Justice WHITFIELD because our Constitution in Section 22 of the Declaration of Rights, provides:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated, and no warrants issued, but upon probable cause, supported by oath or affirmation, particularly describing the place or places to be searched and the person or persons, and thing or things to be seized."

And Section 10 of Article I of the Constitution of the United States provides:

"No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin

Money, emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; Pass any Bill of Attainder, *ex post facto* Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

Chapter 17257, Acts of 1935, defined the terms used therein, "operators" and "location operators." The provisions of the Act contemplated that an operator would lease the devices referred to in the legislative Act to a location operator and that both would be required to pay a license tax for the privilege of operating each machine. It is a matter of common knowledge, and, therefore, a fact which this Court may be assumed to know, that the "operators" of these coin operated devices leased the machines, under the provisions of the law above referred to, to "location operators" and that location operators entered into contracts with the "operators" for the possession and control of the machines for and during the tax period; that these were valuable contracts to the "location operators"; that the location operator did not own the machines and, therefore, if the machines should be confiscated at the end of the lease period it would mean no loss to the "location operator."

This factual condition requires us to differentiate the case at bar from such cases as that cited by the appellees, of Samuel v. McCurdy, Sheriff, 267 U. S. 188, and other like cases. The basis of the conclusion reached in those cases appears to be that the owners of the property involved had control of such property and, therefore, could have avoided a violation of the statute.

I frankly concede that "the police power is a governmental function and neither the State Legislature nor any inferior legislative body to which a portion of such power has been granted, can alienate, surrender or abridge the right to ex-

ercise such power by any grant, contract or delegation whatsoever." 12 C. J. 912; Jackson v. Ledwith, 26 Fla. 163, 7 Sou. 885.

I also know that it is a settled principle of law that the Legislature may authorize the seizure and confiscation of gambling devices, but, all provisions of the Constitution must be taken and read together. It is not a contract between the State and the slot machine owner which is involved in this case, but there is involved here the rights established by contract between the slot machine owner and the slot machine location operator, which contract was provided for and sanctioned by the legislative Act, Chapter 17257, Acts of 1935. Under the provisions of those contracts which are matters of general knowledge, the "location operator" acquired the right to use and operate the machines during the license period which ended with the end of the day of September 20th, 1937, and, although the operator had notice by legislative Act that it was purported to make it unlawful "To manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away" such machines as are here involved beginning with the 1st day of October, 1937, it is a false premise to assume that he, therefore, had time and opportunity to get the machines beyond the jurisdiction of the State of Florida before the law went into effect. He could do that only by violating his contract with the location operator and depriving the location operator of a valuable right which he was entitled to exercise under his contract until the operation of such machines became unlawful. If the Act required the operator to pursue this course then it required him to abrogate his contract in violation of the constitutional provision above referred to.

So it is that the question presented is whether or not the provisions of the Act authorized an unreasonable seizure of personal property which Section 22 of our Declaration of Rights prohibits.

The effect of the Act is to say that every one of the machines described in the Act which operates to the end of the tax period authorized shall thereupon be subjected to confiscation and the owner thereof subjected to criminal prosecution because of ownership.

Although we concede that the machines involved possess all the evil attributes that have been charged to them, it is evident that a strict enforcement of the Act under consideration would constitute an unreasonable seizure of personal property and to that extent the Act contravenes the provisions of the Constitution and is invalid.

BROWN, J. (concurring specially).—I concur in the position taken by Mr. Justice Buford in regard to the effect of Section 22 of the Declaration of Rights under the facts of this case, considered in connection with the contract rights referred to.