JOHN PASTERNACK v. E. R. BENNETT, *et al.*

190 So. 56
Division A
Opinion Filed June 23, 1939

664

*Bart A. Riley* and *Wm. S. Mather,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendants in Error.

BUFORD, J.—The appeal brings for review order of the Circuit Court of Broward County, as follows:

"This cause came on this day to be heard before me upon bill for temporary injunction and the plaintiff and defendants were represented by their respective counsel and the court having heard the argument of counsel, and counsel asserting that the only question involved at this stage of the proceedings is the question of the constitutionality of Chapter 18143, Acts of 1937, both as to the insufficiency of the title of said Act and as to Section 6, and that the Act is invalid because it makes unlawful the mere possession of the machines described in the bill,

"It is therefore ORDERED AND ADJUDGED that the application for temporary injunction be, and the same is, hereby denied.

"It is further considered by the court and agreed to by counsel that no other question except the constitutionality of said Chapter 18143 will be raised in the Supreme Court.

"It is thereupon ORDERED, ADJUDGED AND DECREED that the plaintiff be allowed ten (10) days within which to apply to the Supreme Court of the State of Florida for a supersedeas.

"DONE AND ORDERED at Ft. Lauderdale the 7th day of April, 1939.

"GEORGE W. TEDDER, Judge."

The order was made in a suit for injunction seeking to restrain the forfeiture of certain slot machines and money and other things of value therein under authority of Section 6 of Chapter 18143, Acts of 1937.

The sole question presented to us is: Whether or not the provisions of Section 6, *supra*, which reads as follows: "Section 6. The right of property in and to any machine, apparatus or device as defined in Section 2 of this Act and to all money and other things of value therein, is hereby declared not to exist in any person, assocaition or persons or corporations, and the same shall be forfeited and such money or other things of value shall be forfeited to the county in which the seizure was made and shall be delivered forthwith to the Clerk of the Circuit Court and shall by him be placed in the fine and forfeiture fund of said county."—are within the purview of the title of the Act as required by Section 16 of Article III of our Constitution. The title of the Act is as follows:

"AN ACT Making it Unlawful To Manufacture, Own, Store, Keep, Possess, Sell, Rent, Lease, Let, Lend, Give Away, Use or Operate Slot Machines or Similar Devices Operated by Coin or otherwise: Defining Such Devices, Providing for Their Seizure and Destruction and Providing for the Forfeiture of Money and Other Things of Value Therein: Providing When Possession and Operation Shall Be a Nuisance: Providing Liens on Buildings and Property in or upon Which Said Devices Shall Be Possessed, Maintained or Operated: Providing for Injunctions Restraining Operation, Removal or Possession of Same and Prescribing the Penalties for the Violation of the Provisions of This Act."

Section 16 of Article III of our Constitution is as follows:

"Section 16. Each law enacted in the Legislature shall embrace but one subject and matter properly connected

therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case the Act as revised, or section, as amended, shall be re-enacted and published at length."

The several provisions of the legislative Act here under consideration have heretofore been considered by this Court and the Act held valid and effective as against the challenges presented in those cases. See Weathers v. Williams, 133 Fla. 367, 182 So. 764; Bechtol v. Lee, 129 Fla. 374, 176 So. 265; Eccles v. Stone, 134 Fla. 113, 183 So. 628.

It may not be necessary to repeat here that it is definitely settled in this jurisdiction that those devices commonly known as slot machines are gambling devices; that the use and operation of them has a baneful influence on the persons who indulge in playing them and that they constitute such a menace to public welfare and public morals as to be subject to the police power of the State to regulate, control, prohibit or destroy them.

In the Eccles case, *supra,* we quoted, *inter alia,* the following:

"The police power of the State inheres in its sovereignty and is subject only to applicable provisions of the Federal and State constitutions designed to protect private rights from arbitrary and oppressive governmental action." Everglades Sugar & Land Co., etc., v. Bryan, *et al.,* 81 Fla. 75, 87 So. 68.

"The possession and enjoyment of all rights are subject to the police power, and property of every kind, including contract rights, and rights in things intangible as well as tangible, is held subject to general regulations which are necessary for the common good and general welfare." State *ex rel.* Davis v. Rose, *et al.,* 97 Fla. 710, 122 So. 225, 226. See also Whitaker v. Parsons, 80 Fla. 352, 86

So. 237. And said: "There are two rules which must be observed when courts are called upon to determine the constitutionality of statutes. The first is that if there is any doubt as to the constitutionality of the Act such doubt must be resolved in favor of its validity. The second rule is that the exercise of the police power the sovereignty may enact such laws as are needful to protect certain inalienable rights of the public among others that are of good morals."

We also quoted with approval from the case of Bobel v. People, 173 Ill. 19, 50 N. E. 322, 64 Am. St. Rep. 64, saying:

"And we are of the opinion that it was the purpose of the legislature in enacting this statute, not only to suppress the use of these gambling devices or the keeping of them for gambling purposes, but also to prohibit the ownership or the keeping of them, whether for gambling purposes or not; otherwise, why make it a criminal offense to own or keep them, without qualification as to the purpose of such ownership or keeping, and why provide for their seizure and destruction?"

"That, we think, is what was intended by the language of our statute, whose words, in this connection we have quoted. We think it is clear that for the purpose of preventing the use of a device for gambling the legislature may prohibit its possession or ownership, when it is designed for that purpose. The statute does not make its intended use for gambling a prerequisite."

And further, it is said: " 'The constitutional right which counsel suggest in brief is here violated is the due process provision, in that mere ownership or possession of a gambling device without an intention by the possessor to operate or conduct it, or permit it to be done, is property which cannot be condemned without just compensation. But the right here exercised is not that of eminent domain,

but the police power of the State, by which it may, without compensation to the owner, cause the destruction of property (not take it for use) which is declared by valid legislation proper to promote the health, morals or safety of the community, so that the owner is sufficiently compensated (though compensation is not necessary) by sharing in the general benefits resulting from the exercise of such power. . Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205.' "

It is, therefore, definitely established that it is within the constitutional power of the Legislature to provide for the forfeiting and destruction of such devices as are involved in this case.

Section 6 of the Act does not stand alone, but it is to be read in connection with every other section of the Act, as well as the title. ·

The requirement of Section 16, Article III of the Constitution applicable here is: "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, * * *." And the title of the Act, insofar as we need to consider it here, is: "An Act Making It Unlawful To Manufacture, Own, Store, Keep, Possess, Sell, Rent, Lease, Let, Lend, Give Away, Use, or Operate Slot Machines or Similar Devices Operated by Coin or Otherwise; Defining Such Devices; Providing for Their Seizure and Destruction and Providing for the Forfeiture of Money and Other Things of Value Therein: * * *"

Section 4 authorizes the arresting officer to confiscate machines.

Section 5 provides for the disposition of machines upon confiscation.

Section 6, as hereinbefore quoted, speaks for itself. The provisions of Section 6 are matters properly connected with

the confiscation of the contraband machines and money or other thing of value contained therein. Therefore, Section 6 is within the purview of the title.

We have considered the authorities cited by the appellant to support his contention but cannot find the infirmity in the Act which the appellant contends for.

In the case of Samuels v. McCurdy, 267 U. S. 188, 69 L. Ed. 568, Mr. Chief Justice TAFT, speaking for the Court, quoted with approval the language of Mr. Justice HARLAN in the case of Mugler v. Kansas, 123 U. S. 623, 31 L. Ed. 205, 8 S. Ct. Rep. 273, saying:

"As already stated, the present case must be governed by principles that do not involve the power of eminent domain, in the exercise of which property may not be taken for public use without compensation. A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community cannot, in any just sense be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the state that its use by anyone for certain forbidden purposes, is prejudicial to the public interests. Nor can legislation of that character come within the Fourteenth Amendment, in any case, unless it is apparent that its real object is not to protect the community or to promote the general well-being, but under the guise of police regulation, to deprive the owner of his liberty and property without due process of law. The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals or the safety of the public, is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the

condition that the state must compensate such individual owners for pecuniary losses they may sustain by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner."

We might go further in discussing the provisions of Chapter 18143, *supra,* but we find in the record of the order appealed from this language:

"It is further considered by the court and agreed to by counsel that no other question except the constitutionality of said Chapter 18143 will be raised in the Supreme Court." And counsel for the appellant in his brief has presented the one question which challenges the provisions of Section 6 coming within the purview of the title.

A consideration of the entire record discloses no reversible error. Therefore, the order appealed from should be, and is, affirmed.

So ordered.

Affirmed.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.