BENTON, J.,
dissenting.
I would reverse the Department’s order denying the application Gretna Racing, LLC (Gretna Racing) filed — after a majority in Gadsden County had voted “Yes” in a referendum on the question “Shall slot machines be approved for use at the parimutuel horsetrack facility, in Gretna, FL?” — for a license to conduct slot machine gaming at its horsetrack facility in Gretna.
The Gadsden County Commission is but one of a half dozen county commissions who voted to put slot machine referenda on ballots in reliance on statutory language they read to render eligible for slot machine licenses
any licensed pari-mutuel facility in any other [than Miami-Dade or Broward] •county in which a majority of voters have approved slot machines at such facilities in a 'countywide referendum held pursuant to a statutory or constitutional authorization after the effective date of this section....
Ch. 2009-170, § 19, at 1792, Laws of Fla. (2009). At issue is whether the local officials’ reading of the statutory language— which is also Gretna Racing’s — is correct. This question of statutory -interpretation— not any constitutional or policy issue — lies at the heart of the present case.
The Department maintains that it ‘“is not authorized to issue a slot machine' license to a pari-mutuel facility in a county *33 which ... holds a countywide referendum to approve such machines, absent a statutory or constitutional provision enacted after July 1, 2010, authorizing such referendum.’”' Answer Brief at pp. 4-5 (emphasis added; citation omitted). But section 551.102(4), Florida Statutes (2006), does not contain the word “enacted.” “ ‘Usually, the courts in construing a statute may not insert words or phrases in-that statute or supply an omission that to all appearances was not in the minds of the legislators when the law was enacted. When there is doubt as to the legislative intent, the doubt should be resolved against the power,of the court to supply missing words.’ Special Disability Trust Fund, Dep’t of Labor & Emp’t Sec., v. Motor & Compressor Co., 446 So.2d 224, 226 (Fla. 1st DCA 1984) (quoting Rebich v. Burdine’s, 417 So.2d 284, 285 (Fla. 1st DCA 1982) (internal citation omitted)). Inserting the word “enacted” also strips the quoted statutory language of any legal effect.[13] '
Under the Department’s construction of the third clause of section 55Í.102(4), a referendum could only occur if another statute (or a constitutional amendment) was enacted (or adopted) authorizing a referendum. But that was the status quo before section 551.102(4) was amended (or, indeed, enacted). It goes without saying that the Legislature could enact or amend a statute, or that the people could adopt a constitutional amendment, authorizing a referendum. That was true before chapter 2009-170, section 19, was enacted, and remains true after the enactment. There was no need or purpose in enacting a statutory provision to state the obvious. “We have" recognized that ‘the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render [any] part of a statute meaningless.’ State v. Goode, 880 So.2d 817, 824 (Fla.2002); see also Martinez v. State, 981 So.2d 449, 452 (Fla.2008) (repeating this quote). ‘[Wjords in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words.’ State v. Bodden, 877 So.2d 680, 686 (Fla.2004).” Metro. Cas. Ins. Co. v. Tepper, 2 So.3d 209, 215 (Fla.2009). We should decline the invitation to interpret the third clause in a way that would render the clause perfectly meaningless, nugatory and-without any legal effect.
The .Legislature has plenary authority over .slot machines, authority the parties themselves do not question here.' At oral argument, the assistant attorney general representing the Department conceded that the-Florida Constitution does not restrict the Legislature’s authority to allow slot machines (as, opposed to lotteries). While Judge Makar’s opinion goes on at some length .about our supreme court’s jurisprudence in this area, making much of dicta in Greater Loretta Improvement As *34 sociation v. State ex rel. Hoone, 234 So.2d 665, 671-72 (Fla.1970), it acknowledges that the last word from the Florida Supreme Court came in Advisory Opinion to the Attorney General Be: Authorizes Mia-mir-Dade and Broward Goumty Voters' to Approve Slot Machines in Parimutuel Facilities, 880 So.2d 522, 525 (Fla.2004), where the court actually held: 1. .
We have long since settled the question. of whether slot machines constitute lotteries. In Lee v. City of Miami 121. Fla. 93, 163 So. 486, 490 (1935), we addressed the question of whether certain legislatively described gambling machines, such as slot machines, constituted lotteries prohibited by the state constitution. We concluded they, did not.
“The Constitution of Florida is a limitation of power, and, while the Legislature cannot legalize any gambling device that would in effect amount to a lottery [other than state operated lotteries authorized by article X, section 15 of the Florida Constitution], it has inherent power to regulate [or not] or to prohibit [or not] any and all other forms of gambling.” Lee, 163 So. at 490.. Accord Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass’n, 37 So.2d 692, 694 (Fla.1948) (“Authorized gambling is a matter over which the state may exercise its police power....”). Any implication that a constitutional amendment was or. is necessary to allow slot machines by general law is unwarranted.[14]
But, the broad reach of legislative authority over slot machines and pari-mutuel wagering notwithstanding, the Legislature is subject, in this area, too, to constitutional restrictions on special laws and general laws of local application.[15] Constitutional *35 restrictions on special laws and general laws of local application may help explain resort to the ballot initiative that resulted in article X, section 23, authorizing slot machines at certain (not all) parknutuel facilities in Miami-Dade. and Broward Counties, but not elsewhere.
Article X, section123: does not apply to Hialeah Race Track. Even though located in Miami-Dade County,' Hialeah Race Track does not and could not qualify-for licensure pursuant to section 551.104(2) (or the first clause of section 551.102(4)) because live racing or games did not occur there in “each of the last two calendar years before” article X, section 23 was adopted. The parties stipulated in the proceedings below that “Hialeahs application [which the Department granted after the statutory amendment at issue here] was submitted under the second (2nd) clause of § 551.102(4), F.S., enacted effective 7/1/10,” not under section 551.104(2). Properly read, the second clause, like the third clause on which Gretna Racing relies, expands the universe of eligible facilities beyond the initial seven addressed in article X, . section 23 . and section 551.104(2), Hialeah Race Track, like Gretna Racing’s horsetrack facility, was not among the initial seven facilities.
Summarizing the ■ 2000 amendment to section 551.102(4), .the title to. Chapter 2009-170 described its effect as: “amending s. 551.102, E.S.; redefining the terms ‘eligible facility’ and ‘progressive system’ to include licensed facilities in other jurisdictions,” not just in Miami-Dade or Bro-ward. . Ch. 2009-170, at 1749, Laws of Fla. This description of the amendment makes clear its purpose to .redefine eligible facilities, not merely to lay the (wholly unnecessary) groundwork for. a subsequent statute or constitutional amendment to redefine terms.
By making the’ amendment to section 551.102(4) applicable, not to Hialeah Race Track only, but statewide (“in any other county”) the drafters minimized — -or greatly reduced — the possibility that the amendment would be deemed unconstitutional as a general law of local application (or a special law for the benefit of the Hialeah Racé Track).’ This was understandably a matter of concern: Experience has taught that Hialeah Race Track’s competitors aré a litigious lot. ■
. In response to enactment of this statutory amendment, indeed, perhaps to prevent slot machine competition from the Hialeah Race Track,[16] holders of pari-mutuel wa *36 gering permits in Miami — Dade County who were already licensed to install slot machines sought a declaratory judgment that the' 2009 amendment to section 551.102(4) at issue here was unconstitutional in its entirety. See Fla. Gaming Ctrs., Inc. v. Fla. Dep’t of Bus. & Prof'l Regulation, 71 So.3d 226, 228 (Fla. 1st DCA 2011). They argued that article X, section 23 of the Florida Constitution limited legislative power to authorize slot machine gaming, by implication, to licensed pari-mutuel facilities in Miami-r-Dade and Broward Counties that had conducted live racing or games during calendar years 2002 and 2003. Id. (The Hialeah Race Track conducted racing during the two years before it applied for a slot machine license, but not in 2002 and 2003, i.e., not “during each of the last two calendar years before the effective date of’ article X, section 23.)
The incumbent licensees’ argument was rejected by each court that considered it. We affirmed summary judgment upholding the constitutionality of section 19 of chapter 2009-170, Laws of Florida, the 2009 amendm’ent to section 551.102, and said: “[T]he only thing that Article X, section 23 limited was the Legislature’s authority to prohibit slot machine gaming in certain facilities in -the two counties. Contrary to Appellants’ position, Article X, section 23 provides no indication that Florida voters intended to forever prohibit the' Legislature from exercising its authority to expand slot machine gaming beyond those facilities in Miami-Dade and Broward Counties meeting the specified criteria. Nor is there any indication that Florida voters intended to grant the seven entities who met the criteria a constitutionally-protected monopoly over slot machine gaming in the state.” Id. at 229 (citation omitted). The Supreme Court of Florida denied review. Fla. Gaming Ctrs., Inc. v. Fla. Dep’t of Bus. & Prof'l Regulation, 90 So.3d 271 (Fla.2012).
Against this background,[17] the question before us remains a question of statutory interpretation, and depends ultimately on the amendment’s wording.[18] The language *37 in contention does not reflect any “special agency expertise,” and- the Department does not maintain that any special agency expertise it may have in the area of parimutuel wagering or gaming' supports its construction. See State, Dep’t of Ins. v. Ins. Servs. Office, 434 So.2d 908, 912 n. 6 (Fla. 1st DCA 1983) (“[B]y urging a construction of these terms based upon their common, ordinary meanings, the Department disavows the utilization of any special ‘agency expertise’ in its interpretation of the statute. This mitigates; if it does not entirely eliminate, the rule calling upon the court to accord ‘great deference’ to the agency’s interpretation of the statute.”). See also Schoettle v. State, Dep’t of Admin., Div. of Ret., 513 So.2d 1299, 1301 (Fla. 1st DCA 1987) (same). The Department explicitly relies, not on any purported agency expertise, but on an Attorney General’s Opinion.[19]
*38 Review of-the Department’s “construction” (based entirely on Attorney General Opinion 2012-01) of the statute is de novo. See Fla. Dep’t of Children & Family. *39 Servs. v. P.E., 14 So.3d 228, 234 (Fla.2009). “Legislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning.” Id. The “ ‘statute’s text is the most reliable'and authoritative expression of the Legislature’s intent.’ Courts are ‘without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.’ ” Hooks v. Quaintance, 71 So.3d 908, 910-11 (Fla. 1st DcA 2011) (citations omitted).
The Department’s construction would render superfluous the entire third clause, the clause that begins “any licensed parimutuel facility in any other county,” on which Gretna Racing relies. In this connection, it must be said, that Attorney General Opinion 2012-01 is correct on one point,[20] vie,;
It is a maxim of statutory construction that a statute is to be construed to give meaning to all words and phrases contained within the statute and that statutory language is not to be assumed to be mere surplusage.[11]
“‘When the Legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of the law, unless a contrary indication is clear.’ ” Altman-Contractors v. Gibson, 63 So.3d 802, 808 (Fla. 1st DGA 2011) (quoting Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996)).
The Department’s quibbles do not address this basic point. Contrary to the Department’s assertion, Gretna Racing’s interpretation does not render'superfluous the phrase “pursuant to a statutory or constitutional authorization.” The referendum that made Gretna Racing’s horsetrack eligible for slot machine gaming licensure took place pursuant to statutory authorization. Section 125.01(1)(y), Florida Statutes (2012) requires “a majority vote of the total membership of the legislative and governing body,” here the Gadsden County Commission, to place a question or proposition on the ballot. The Gadsden County Commissioners’ vote supplied statutory authorization for the referendum.
Nor does Gretna Racing’s interpretation render meaningless the routine language “after the effective date of this section.” See Ch. 2009-170, § 26, at 1803, Laws of *40 Fla. (providing in part that “[s]ections 4 through 25 [of this act] shall take effect only if the Governor and an authorized representative of the Seminole Tribe of Florida execute an Indian Gaming, Compact ■ <.., only if the compact is ratified by the Legislature, and only if the compact is ajpproved or deemed approved, and not voided pursuant to the terms of this act, by the Department of the Interior, and such sections take effect on the date that the approved compact is published in the Federal Register”); see also Ch. 2010-29, §§ 4-5, at 295, Laws of Fla., (amending ch. 2009-170, § 26, Laws of Fla. and providing that “[sjections 4 through 25 of chapter 2009-170,'Laws of Florida, shall take effect July 1, 2010”): The effective date of the statute was highly uncertain at the time of its enactment, and the Legislature provided that referenda “in any other county” should await the events on which the effective date depended.
The Department argues it is precluded from issuing a slot machine license to Gretna Racing because section 551.104(2) “currently allows the Division to approve applications for slot machine permits only from pari-mutuel facilities in [Miami-Dade and Broward C]oimties as specified by article X, section 23, of the Florida Constitution.” The actual text of section 551.104(2) provides, however, that an “application may be approved by the division only after the voters of the county where the applicant’s facility is located have authorized by referendum slot machines within pari-mu-tuel facilities in that county as specified in s. 28, Art. X of the State Constitution.” (Emphasis added.) Hialeah Race Track does not fall within this class. Like Gret-na' Racing, its eligibility depends :on the statutory amendment, not the constitutional amendment. The Department granted Hialeah Race Track’s application without a murmur, and it should have treated Gretna Racing’s application in like fashion.
The Department’s reliance on sections 551.101 and 551.104(2) to deny Gretna Racing’s application 'is as unjustified under familiar rules of statutory construction as it is inconsistent. “When reconciling statutes that may appear to conflict, the rules of statutory construction provide that a ... moré recently enacted statute will control over older statutes. See Palm Bch. Cnty. Canvassing Bd. v. Harris, 772 So.2d 1273, 1287 (Fla.2000); see also ConArt, Inc. v. Hellmuth, Obata + Kassabaum, Inc., 504 F.3d 1208, 1210 (11th Cir.2007). With regard to th[is] ... rule, th[e Florida Supreme] Court has explained ‘[t]he more recently enacted provision may be viewed as the clearest and most recent expression of legislative intent.’ Harris, 772 So.2d at 1287.” Fla. Virtual Sch. v. K12, Inc., 148 So.3d 97, 102 (Fla.2014). The Department’s reliance oh this preamendment language (and the maxim inchtsio unius est exclusio álterius) is, moreover, irreconcilably at odds with its issuance of a license for slot machines at Hialeah Race Track.
In sum, after Gadsden County complied with all requirements for placing the question on the ballot, a majority of Gadsden County voters approved slot machines at Gretna Racing’s pari-mutuel horsetrack facility. Gadsden County held its referendum after July 1, 2010, the date the legislation amending section 551.102(4) finally took effect. The Gadsden County Commission had clear, statutory authority to place the question on the ballot. See § 125.01(1)(y), Fla. Stat. (2012); see also Crescent Miami Ctr., LLC v. Fla. Dep’t of Revenue, 903 So.2d 913, 918 (Fla.2005) (“Florida’s well-settled rule of statutory construction [is] that the legislature is presumed to know the existing law when a statute is enacted, including judicial decisions on the subject concerning which it *41 subsequently enacts a statute.” (internal quotation marks and citations omitted)); Watt v. Firestone, 491 So.2d 592, 593 (Fla. 1st DCA 1986) (stating non-charter counties have authority to conduct referenda[21] on casino gambling under article VIII, section 1(f) of the Florida Constitution and section 125.01, Florida Statutes). Because the countywide referendum was held “after the effective date of’ the amendment to section 551.102(4),.Gretna Racing is an “eligible facility,” as defined in section 551.102(4).
I respectfully dissent.

. See Butler v. State, 838 So.2d 554; 555-56 (Fla,2003) ("Because the Legislature does not intend to enact purposeless or useless laws, the primary rule of statutory interpretation' is to harmonize related statutes so that each is given effect.” (citation omitted)); Sharer v. Hotel Corp. of Am., 144 So.2d 813, 817 (Fla. 1962) ("It should never-be presumed that the legislature intended to enact purposeless and therefore useless, legislation. Legislators are not children who build block playhouses for the purpose, and with the gleeful anticipation, of knocking them down. It would be the height [sic] of absurdity to assume that the legislature intentionally prescribed a formula which creates the need for a Special Disability Fund, and in the next breath deviously destroyed its own handiwork — thus making a mockery of the intended beneficent purpose of the Special Disability Fund itself.... We cannot be persuaded that a majority of the legislators designedly used an indirect, unusual and abnormal procedure. It 'suggests either inadvertence or cabal.” (footnote omitted)).

. See Pasternack v. Bennett, 138 Fla. 663, 190 So, 56, 57 (1939).("CI]t is ,settled in this jurisdiction that those devices commonly known as slot machines are gambling devices ... subject to the police power of the State to regulate, control, prohibit or destroy them.”); Eccles v. Stone, 134 Fla. 113, 183 So. 628, 631-32 (1938) (recounting that the Legislature legalized the operation of slot machines in 1935, then prohibited tire operation of coin-operated gambling devices in 1937, and that the ‘‘state policy has for many years been against all forms of gambling, with the exception of the legislative enactment legalizing parimutuel wagers on horse: racing and the 1935 Act legalizing the operation of slot machines”); Fla. Gaming Ctrs., Inc. v. Fla. Dep’t of Bus. & Prof'l Regulation, 71 So.3d 226, 229 (Fla. 1st DCA 2011) (‘‘The Legislature has broad discretion in regulating and controlling pari-mutuel wagering and gambling.,..”).

. Compare, e.g., Fla. Dep’t of Bus. & Prof'l Regulation v. Gulfstream Park Racing Ass’n, 967 So.2d 802, 809 (Fla.2007) (holding a statute regulating live broadcasts of horse races was unconstitutional as a special law, albeit enacted in the guise of a general law, without compliance with the requirements for the enactment of special laws because the conditions making the provision applicable “existed only in the'area where Gulfstream-was located, and there was no reasonable possibility that they would ever exist in another part of the state”); Dep’t of Bus. Regulation, v. Classic Mile, Inc., 541 So.2d 1155, 1158-59 (Fla. 1989). (holding statute regarding thoroughbred horse racing was unconstitutional as a special law in the guise of a general law because Marion County was the sole county that would ever fall within the statutorily designated class of counties eligible for licensure; rejecting argument that "the regulatory responsibilities given to the state under the statute [were] part of the overall statewide regulatory scheme for the parimutuel industry, thereby rendering the statute a general law”; and rejecting argument that the statewide impact of revenue that might, be generated as a result of tire statute rendered the statute a general law); Ocala Breeders' Sales Co. v. Fla. Gaming Ctrs., Inc., 731 So.2d.21, 24-25 (Fla. 1st DCA 1999) (holding statute that enabled one thoroughbred horse breeder operating within the state to obtain an exclusive license to conduct pari-mutuel wagering at its sales facility was an unconstitutional special law enacted in the guise of a general law), aff'd, 793 So.2d 899 (Fla.2001), with, e.g., License Acquisitions, LLC v. Debary Real Estate Holdings, LLC, 155 So.3d 1137, 1142, 1147 (Fla. *35 2014) (holding a statute that authorized a jai alai facility to convert to a dog track under certain circumstances was a valid general law "because there is a reasonable possibility that it could apply to ten of the'eleven jai alai permits in the state” and rejecting an interpretation of the statute that would render it an unconstitutional special law), See also Dep't of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 882-83 (Fla. 1983) (concluding that legislation that, once passed, benefited only a track in Seminole County, was a valid general law because the statute could be applied to tracks that might be built in the future)’; Biscayne Kernel Club, Inc. v. Fla. State Racing Comm’n, 165 So.2d 762, 763-64 (Fla. 1964) (holding statute regulating privilege of conducting harness racing was valid general act of uniform operation because “all of the classifications effected by th[e] act are made on the basis of factors which are potentially applicable to others” because "a number of Florida counties may by .future referendum acquire racing establishments ... within the class covered”).

. Subsequent to the decision in Florida Gaming Centers, Inc. v. Florida Department of Business & Professional Regulation, 71 So,3d 226 (Fla. 1st DCA 2011), South Florida Racing Association, LLG, owner of Hialeah Race Track, filed-ah application for a license to conduct slot machine gaming at the Hialeah Race Track in Miami-Dade County. Before the 2009 amendment to section 551.102(4), Hialeah Race Track was ineligible for such a license. It was not among the seven facilities authorized by the 2004 constitutional amend *36 ment to be licensed to conduct slot machine gaming because "live racing or games” did not take place at Hialeah Race Track "during each of the last two calendar years before the effective date of t[he] amendment.” Art. X, § 23, Fla. Const.

. The Legislature, which was negotiating a (now expired) gaming compact with the Seminole Tribe of Florida during the 2009 session, provided that the statutory amendment before us in the present case would "take effect on the date the approved compact is published in the Federal Register,” Ch. 2009-170, § 26, at 1803, Laws of Fla., if at all. Uncertainty about the gaming compact and the prospect of a possibly prolonged period before the provision would take effect fully explain why the Legislature required that authorizing referen-da occur only after the effective date of the amendment.
The argument that a proliferation of slot machines "would be at odds with the'legislation as a whole,” Op. Atty. Gen. Fla.2012-01 (2012), because it could diminish revenue for the Seminole Tribe of Florida applies with equal force to the. immediately preceding clause authorizing slot machines at Hialeah Race Track. The bill that became Chapter 2009-170 was apparently "the only train moving” in the 2009 legislative session.

. Given the language of the statute, there is no occasion for any .extratextual quest for legislative intent. In any event, the majority’s resort to a single legislator’s views expressed after the legislation was enacted is inappropriate and unpersuasive. It ampunts to "oxymo-ronic ‘subsequent legislative history’ ” that can "add nothing.” Walsh v. Brady, 927 F.2d 1229, 1233 n. 2 (D.C.Cir.1991). "[Ejfforts by individual members of Congress or congres-f sional committees to state retrospectively the earlier intention of the Congress as a legislative body do not suffice to interpret the meaning of a statute formally enacted by an earlier Congress.” U.S. v. City of Miami, Fla., 664 F.2d 435, 437 n. 1 (5th Cir.1981).
The rule in Florida state courts to the Same effect is also clear. See Sec. Feed & Seed Co. *37 v. Lee, 138 Fla. 592, 189 So. 869, 870 (1939) ("We do not overlook the support given appellants’ contention by affidavits of members of the Senate as to what they intended to accomplish by the act brought in question. The law appears settled that such testimony is of doubtful verity if at all admissible to show what was intended by'the Act.”); State v. Patterson, 694 So.2d 55, 58 n. 3 (Fla. 5th DCA 1997) ("The State correctly concedes that the testimony provided by former Representative Glickman did not shed meaningful light on the legislature’s intent in amending section 415.512. As stated in Security Feed & Seed Co. v. Lee, 138 Fla. 592, 189. So. 869 (1939), the testimony of individual members of the legislature as to what they intended to accomplish, is of doubtful worth in determining legislative intent and may not even be admissible.”); McLellan v. State Farm Mut. Auto. Ins. Co., 366 So.2d 811, 813 (Fla. 4th DCA ,1979) (stating affidavit of.legislator stating his view of legislative intent is "generally not accepted as admissible evidence to demonstrate legislative intent”), disapproved on other grounds, S.C. Ins. Co. v. Kokay, 398 So.2d 1355 (Fla. 1981).
As the court did in Michigan United Conservation Clubs v. Lujan, 949 F.2d 202, 209 (6th Cir.1991), we should "decline to give.significance to sponsors’ private thoughts expressed subsequent to the enactment of a bill or an amendment.” See also Am. Constitutional Party v. Munro, 650 F.2d 184, 188 (9th Cir. 1981) (“As a member of the Conference Committee which drafted the legislation, Representative Nelson's statement might be entitled to some weight if it had been made contemporaneously with the passage of the legislation. Coming one year later, it is entitled to no weight and cannot be relied on as indicative of legislative motivation or intent."); Rogers v. Frito-Lay, Inc., 611 F.2d 1074, 1080 (5th Cir. 1980) ("The retroactive wisdom provided by the subsequent speech of a member of Congress stating that yesterday we meant something that we did not say is an ephemeral guide to history. Though even God cannot alter the past, historians can, Compare Samuel Butler, Creation Revisited, c. 14, and other mortals are not free from the temptation to endow yesterday with the wisdom found today. What happened after a statute was enacted may be history and it may come from members of the Congress, but it is not part of the legislative history of the original enactment,”); 2A Norman Singer & Shambie Singer, Sutherland Statutes & Statutory Construction § 48.16 (7th ed. 2007) ("A corollary to the general rule against the use of statements by individual legislators made during debate on a bill directs courts not to consider testimony about legislative intent by members of the legislature which enacted a statute. Courts probably want to avoid issues relating to the credibility of legislators and ex-legislators, in addition to the reasons to avoid an individual legislator’s statements about legislative intent. Postenactment statements made by a legislator about legislative intent, including affidavits, are not part of the original enactment’s legislative history.” (footnotes omitted)).

. “Attorney General opinions do not, of course, have binding effect in court. See Abreau v. Cobb, 670 So.2d 1010, 1012 (Fla. 3d DCA 1996); Johnson v. Lincoln Square Props., Inc., 571 So.2d 541, 543 (Fla. 2d DCA 1990); Causeway Lumber Co. v. Lewis, 410 So.2d 511, 515 (Fla. 4th DCA 1981).” Edney v. State, 3 So.3d 1281, 1284 (Fla. 1st DCA 2009), See also Bunkley v. State, 882 So.2d 890, 897 (Fla,2004) (recognizing that "opinions of the Attorney General are not statements of law”); State v. Family Bank of Hallandale, 623 So.2d *38 474, 478 (Fla. 1993). ("The official opinions of the Attorney General, the chief law officer of the 'state, are guides for state executive and administrative officers in performing their official duties until superseded by judicial decision."'); Comm’n on Ethics v. Sullivan, 489 §o.2d 10, 13 (Fla. 1986) (noting that although the attorney general has the ability pursuant to section 16.01(3), Florida Statutes, to issue advisory opinions, "such power alone, and without any other constitutional demand, would not make the attorney general a part of the judicial branch”); Browning v. Fla. Prosecuting Attorneys Ass'n., 56 So.3d 873, 876 n. 2 (Fla. 1st DCA. 2011) ("Attorney General opinions are not binding on Florida courts and can be rejected.”); Ocala Breeder Sales Co. v. Div. of Pari-Mutuel Wagering, Dep’t of Bus. Regulation, 464 So.2d 1272, 1274 (Fla, 1st DCA 1985) ("Our holding is contrary to the cited opinion of the attorney general, but that opinion is not binding upon the court,”),
In anticipation of applications like1 Gretna Racing's, the Department posed the following question to the Attorney General: "Does the third clause of section ■551.102(4), Florida Statutes, .,, permit the Department to grant a slot machine license to a pari-mutuel facility in a cóunty which holds a countywide referendum to approve such machines, absent a statutory or constitutional provision enacted after July 1, 2010, authorizing' such referendum?” Op. Att’y Gen: Fla.20Í2-01 (2012). On January 12, 2012, the Attorney General opined tire Department was not authorized to issue a slot machine license'pursuant to the third clause of section 551.102(4) “absent a statutory or constitutional provision enacted after July 1, 2010”' because’ the governing clause "contemplates the necessity of additional statutory or constitutional authorization before such a referendum may be held,” Id.
Attorney General Opinion 2012 — 01, on which the Department relied, given in response to a letter in which Department Secretary Lawson requested the Attorney General’s views, states in part:
Section 551.104(1), Florida Statutes, provides in pertinent part that the Division “may issue a license to conduct slot machine gaming in the designated slot machine gaming area of the eligible facility.” (e.s.) The.term "eligible facility” is defined for purposes of your inquiry to mean:
"any licensed pari-mutuel' facility in any other'county in which a majority of voters have approved slot machines at such facilities in a comitywide referendum held pursuant to a statutory or constitutional authorization after the effective date of this section-in the respective county, provided such facility has conducted a full schedule of live racing for 2 consecutive calendar years immediately preceding its application for a slot machine- license, pays the required licensed- fee, -and meets the other requirements of this-chapler,”
[[Image here]]
In light of the amendment to section 551.102(4),-Florida Statutes, a question has arisen as to whether the statute's third clause contemplates that a coupty may now hold a referendum to authorize slot machines, or, alternatively, whether the statute contemplates the necessity of additional statutory or constitutional authorization before such- a referendum may be held. Based on my review of the statute, T conclude that additional statutory or constitutional authorization is required to bring a referendum within the framework set out in the third clause of section 551.102(4).
... I am of the opinion that the Department of Business and Professional Regulation is not authorized to issue a slot machine license to a pari-mutuel facility in -a county which, pursuant to the third clause in section 551.102(4), Florida Statutes, holds a countywide' referendum to approve such machines, absent a statute or constitutional provision enacted after July 1, 2010, authorizing such referendum,
(Footnote omitted.) Attorney General Opinion 2012-01 relied’heavily on the location of the phrase "after’ the effective date of this section’’ within what the Opinion called “the third clause of section 551,102(4).”
Attorney General Opinion 2012 — 01 also relies on á mistaken reading of the second clause of the amendment; and, under the heading of legislative intent, the’remarks of a single legislator made during the session in the year following the session in which Chapter 2009-170, section 19, Laws of Florida, was enacted.

 See, e.g., Terrinoni v. Westward Ho!, 418 So.2d 1143 (Fla. 1st' DCA 1982); Unruh v. State, 669 So.2d 242 (Fla.1996) (as a fundamental rule of statutory interpretation, courts should avoid readings that would render part of a statute meaningless); Op. Att’y Gen. Fla. 91-16 (1991) (operative language in a statute may not be regarded as surplusage).

. Attorney General Opinion 2012-01’s claim that "there were no pre-effective date referen-’ da to be excluded from the ambit of” the third clause is plainly incorrect, however, The first clause covers pari-mutuel licensees in Miami-Dade and Broward Counties that had conducted live racing or games in 2002 and 2003. The second clause covers pari-mutuel licensees in Miami-Dado County that had conducted live racing for two consecutive calendar years immediately preceding applying for a slot machine license. The third clause applies to pari-mutuel licensees that conduct live racing for two consecutive calendar years immediately preceding applying for a slot machine license in any other county in which a referendum succeeds after July 1, 2010, including any such Broward County facilities that did not already have slot machine licenses, even though Broward County can be said to have conducted a "pre-effective date refer-end[um].”
Since the effective date of the statutory amendment was contingent and uncertain, see infra n. 6, “pre-effective date referenda” were entirely possible and were appropriately addressed with the language "after the effective date of this section.”

. "[T]he referendum power 'can be exercised whenever the people through their legislative bodies decide that it should be used. Florida Land Co. v. City of Winter Springs, 427 So.2d 170, 173 (Fla.1983).” Holzendorf v. Bell, 606 So.2d 645, 648 (Fla. 1st DCA 1992), Black’s Law Dictionary 1285 (7th ed.1999) defines "referendum” as: “1. The process of referring ... an important public issue to the people for final approval by popular vote. 2. A vote taken by this method.” Unlike a referendum required for approval of a special law (see article III, section 10, Florida Constitution, which provides: "No special law shall be passed unless notice of intention to seek enactment 'thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except the provision for referendum, is conditioned to become effective only upon approval by vote of the electors of the area affected.”),' voter approval of slot- machines does not automatically result in issuance of a license. Private parties, situated as described in Chapter 551, must then take the initiative and make application for a license. Since issues may arise regarding whether an applicant satisfies other statutory requirements for licensure, the grant of a license is. not automatic.
The Department asserts, for the.first time <pn appeal, that the favorable response of Gadsden County voters to a "sentiment” question about slot machines was mot tire specifically authorized referendum required by section ; 551.102(4). See generally D.R. Horton, Inc.-Jacksonville v. Peyton, 959 So.2d 390, 397 (Fla. 1st DCA 2007) ("When the trial court' reaches the right result, but 'for the wrong reasons, that decision will be'upheld on appeal if there is any basis which would support the judgment in the record.” (citing Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999))). The Department’s argument that section 125.01(1)(y), Florida Statutes, does not authorize Gadsden County to-hold a legally binding referendum regarding slot machines and that obtaining "an expression of voter sentiment” is "notably different from referring a legislative act to the people for ‘final approval by popular vote’ ” cannot be reconciled with Watt v. Firestone, 491 So.2d 592, 593 (Fla, 1st DCA 1986).